## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-CV-02606-NYW

CHRISTIAN GODINEZ, individually and as the putative Wrongful Death Representative for the Estates of of Aaron Godinez, Emiliano Godines, and Christina Godines,
ABIGAIL GODINEZ, individually, and as the Personal Representative for the Estate of Aaron Godinez,

       Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation,
UNITED STATES OF AMERICA, by and through the United States Postal Service,
JOSE MAURICIO COREAS d/b/a CAMINANTES TRUCKING,
PARIS WEST TRUCKING, INC., a California Corporation,
CAMINANTE LOGISTICS, INC., a California Corporation,
LUCKY 22, INC., a Colorado Corporation,
CARLOS COREAS, individually,
JESUS PUEBLA, individually,

      Defendants.

## SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs, by and through their undersigned attorney, Grant H. Lawson of The Metier Law Firm, LLC, bring this wrongful death action pursuant to the laws of the State of Wyoming and for their causes of action and claims for relief against the Defendants, state and allege as follows:

### PARTIES, JURISDICTION AND VENUE

1. This is an action in diversity under 28 U.S.C. § 1332 for the wrongful deaths of Emiliano Godines, Christina Godines and Aaron Godinez which stem from a traffic crash with damages well in excess of Seventy-Five Thousand ($75,000) Dollars, exclusive of interest and costs.

2. Venue is proper in the United States District Court, District of Colorado, pursuant to 28 U.S.C. § 1391(b)(3), and additionally for the reasons stated below.

3.     This Court has jurisdiction over this matter pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq*.

4.     Plaintiff Christian Godinez, a citizen and domiciliary of Campbell County, Gillette, Wyoming, as wrongful death claimant and as the putative wrongful death representative on behalf of all claimants and beneficiaries making claims for the wrongful deaths of Emiliano Godines, Christina Godines, and Aaron Godinez.

5.     Plaintiff Abigail Godinez, a citizen and domiciliary of Campbell County, Gillette, Wyoming, as wrongful death claimant on behalf of Emiliano Godines and Christina Godines and Personal Representative of the Estate of Aaron Godinez.

6.     At all times relevant hereto, Emiliano Godines (now deceased), was a citizen and domiciliary of Campbell County, Gillette, Wyoming.

7.     At all times relevant hereto, Christina Godines (now deceased), was a citizen and domiciliary of Campbell County, Gillette, Wyoming.

8.     At all times relevant hereto, Aaron Godinez (now deceased), was a citizen and domiciliary of Campbell County, Gillette, Wyoming.

9.     At the time of their deaths, Emiliano Godines and Christina Godines were married to each other.

10.     At all times relevant hereto, Emiliano Godines was the father of Christian Godinez and Abigail Godinez, the Plaintiffs.

11.     At all times relevant hereto, Christina Godines was the mother of Christian Godinez and Abigail Godinez, the Plaintiffs.

12.     At all times relevant hereto, Aaron Godinez was the brother of Christian Godinez and

Abigail Godinez, the Plaintiffs.

13.    At all times relevant hereto, and currently, Plaintiffs Christian Godinez and Abigail Godinez are citizens of and are domiciled in Campbell County, Gillette, Wyoming, and are the natural children of Emiliano Godines and Christina Godines, both deceased and the natural siblings of Aaron Godinez, deceased.

14.    At the time of his death, Emiliano Godines was 51 years of age.

15.    At the time of her death, Christina Godines was 47 years of age.

16.    At the time of his death, Aaron Godinez was 20 years of age.

17.    At the time of their parents' and brother's death, Christian Godinez was 22 years of age and Abigail Godinez was 18 years of age.

18.    Plaintiff Christian Godinez is the putative Wrongful Death Representative in Campbell County, Wyoming on behalf of all wrongful death beneficiaries for the estates of Emiliano Godines, Christina Godines and Aaron Godinez.

19.    On or about December 8, 2022, Plaintiff Abigail Godinez was formally appointed as the Personal Representative of the Estate of Aaron Godinez.

20.    Abigail Godinez brings these claims on her own behalf for wrongful death damages for the deaths of her parents and as Personal Representative of the Estate of Aaron Godinez for survival claims in accordance with the applicable law.

21.    On information and belief, Defendant Jose Mauricio Coreas d/b/a Caminantes Trucking (hereinafter "Caminantes"), is a California sole proprietorship doing business within the State of Colorado.

22.    Defendant Caminantes provides for the transportation of property and goods to customers

throughout the United States and the State of Colorado.  Upon information and belief, Caminantes' principal location is 2035 West 15th Street, Long Beach, California 90813.

23.     Defendant Caminantes, at all times relevant to the allegations contained herein, was a registered motor carrier and shipper with the Federal Motor Carrier Safety Administration, MC-616117 and United States Department of Transportation, USDOT #1676627.

24.     At all times relevant hereto, Defendant Caminantes was a for-hire motor carrier operating a commercial motor vehicle, a straight truck, while transporting property in interstate commerce.

25.     As of the date of filing of this Second Amended Complaint and at all other material times, Defendant Jesus Puebla was a citizen of, and domiciled in, Denver County, Denver, Colorado, with a last known address of 16503 E 49th Avenue, Denver, Colorado 80239.

26.     On information and belief, at all times relevant hereto, Jesus Puebla was the driver of the truck which was at fault in the subject incident.  At all times relevant to this action, Jesus Puebla was employed jointly as a statutory employee, as defined by 49 U.S.C. § 14102(a), 49 C.F.R. §§ 376.12-376.22, 49 C.F.R. § 390.5 by Defendants UNITED STATES, Caminantes, Jose Mauricio Coreas, Carlos Coreas and Lucky 22, Inc.

27.     As of the date of filing of this Second Amended Complaint and at all other material times, Defendant Carlos Coreas was a citizen of, and domiciled in, Weld County, Hudson, Colorado, with a last known address of 806 Birch Street, Unit 9, Hudson, Colorado 80642.

28.     On information and belief, at all times relevant hereto, Carlos Coreas was the registered owner of the Kenworth T800 straight truck operated by Jesus Puebla.

29.     Defendant Lucky 22, Inc. (hereinafter "Lucky 22"), is a Colorado Corporation registered

at 9400 W 67th Pl, Arvada, Colorado 80004.

30.    Defendant Lucky 22 is a registered carrier with the United States Department of Transportation, USDOT #3170539.

31.    At all times relevant hereto, Lucky 22 was a for-hire motor carrier operating a commercial motor vehicle, a straight truck, while transporting property in interstate commerce.

32.    On information and belief, at all times relevant hereto, Carlos Coreas was the owner of Lucky 22.

33.    On information and belief, Carlos Coreas is Jose Mauricio Coreas' son.

34.    On information and belief, at all times relevant hereto, Defendant Jesus Puebla was an employee, servant, contractor and/or agent of Defendant Lucky 22.

35.    Defendant Paris West Trucking, Inc. (hereinafter "Paris West"), is a California Corporation registered at 2105 W. 15th St., Long Beach, California 90813.

36.    Defendant Carlos Coreas is the registered agent listed with the California Secretary of State for Defendant Paris West.

37.    Defendant Caminante Logistics, Inc. (hereinafter "Caminante Logistics"), is a California Corporation registered at 2105 W. 15th St., Long Beach, California 90813.

38.    Defendant Caminante Logistics is a registered carrier with the United States Department of Transportation, USDOT #4025025.

39.    Defendant Caminante Logistics is a for-hire motor carrier operating commercial motor vehicles while transporting property in interstate commerce.

40.    Defendant UNITED STATES of AMERICA (hereinafter "UNITED STATES") operates the United States Postal Service (U.S.P.S.), an agency of the United States of America,

engaged in the service of delivering and collecting mail throughout the United States, including Colorado.

41. At all relevant times hereto, Defendant UNITED STATES hired, selected, brokered and/or contracted with Defendant Jesus Puebla, Caminantes and/or Defendants Carlos Coreas and Lucky 22, to transport property in interstate commerce. Defendant UNITED STATES was doing business in the state of Colorado and is domiciled in the State of Colorado for purposes of personal jurisdiction and is subject to the jurisdiction and venue of this Court.

42. On February 1st, 2023, Plaintiffs presented a timely administrative tort claim to the United States Postal Service in accordance with 28 CFR Part 14, Standard Form 95.

43. On June 29th, 2023, the UNITED STATES (U.S.P.S.) issued a letter denying Plaintiffs' claims, prompting these claims to be brought pursuant to 28 U.S.C. Section 2401(b) and 39 C.F.R. 912.9(a).

44. On information and belief, Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY (hereinafter "STATE FARM") is an Illinois Corporation with its principal place of business at One State Farm Plaza, Bloomington, Illinois 61710.

45. On information and belief, Defendant STATE FARM, is registered to conduct business in Colorado and may be served through its registered agent, the Corporation Service Company, 1900 W Littleton Blvd, Littleton, Colorado 80120-2023.

46. This Court may exercise personal jurisdiction over Defendant STATE FARM because, on information and belief, Defendant STATE FARM avails itself to the laws of the States of California, Colorado and Wyoming as it sells and provides insurance services to customers across the United States, including California, Colorado and Wyoming.

## **RESPONDEAT SUPERIOR**

47.  Whenever in this Complaint it is alleged that a Defendant did any act or thing, it is meant that the Defendant's agents, officers, directors, servants, employees or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of said Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees or representatives.

48.  Upon information and belief, Defendants Caminantes, Lucky 22, and the UNITED STATES Defendants were "motor carriers" pursuant to 49 U.S.C. 13901(c), responsible for the transportation services in interstate commerce of Defendant UNITED STATES goods.

49.  On information and belief, at all times pertinent hereto, Jesus Puebla was a servant, agent and statutory employee of Defendant UNITED STATES, and at all times pertinent hereto was acting within the course and scope of his statutory employment for Defendant UNITED STATES and in the furtherance of the U.S.P.S.'s business. As a result, Defendant UNITED STATES is personally liable for all independent negligent, reckless, willful, wanton and/or intentional acts and is vicariously liable for all negligent, reckless, willful, wanton, and/or intentional acts committed by its employee, Jesus Puebla, in the course and scope of his statutory employment and for the serious injuries to Plaintiffs and damages suffered by Plaintiffs.

50.  On information and belief, at all times pertinent hereto, Jesus Puebla was a servant, agent and statutory employee of Defendant Caminantes, and at all times pertinent hereto was

acting within the course and scope of his statutory employment for Defendant Caminantes and in the furtherance of said employer's business.  As a result, Defendant Caminantes is personally liable for all independent negligent, reckless, willful, wanton and/or intentional acts and is vicariously liable for all negligent, reckless, willful, wanton, and/or intentional acts committed by its employee, Jesus Puebla, in the course and scope of his statutory employment and for the serious injuries to Plaintiffs and damages suffered by Plaintiffs.

51.    On information and belief, at all times pertinent hereto, Carlos Coreas was the owner of Defendant Lucky 22, Inc. and at all times pertinent hereto was acting in the furtherance of Lucky 22's business.  As a result, Defendant Lucky 22 is personally or vicariously liable for all negligent acts committed by Carlos Coreas, in the course and scope of his ownership of the company and for the serious injuries to Plaintiffs and damages suffered by Plaintiffs.

52.    On information and belief, at all times pertinent hereto, Jesus Puebla was a servant, agent and/or employee of Defendant Lucky 22 and at all times pertinent hereto was acting within the course and scope of his employment for Defendant Lucky 22 and in the furtherance of said employer's business.  As a result, Defendant Lucky 22 is personally or vicariously liable for all independent negligent, reckless, willful and/or intentional acts and all negligent, reckless, willful, wanton, and/or intentional acts committed by its employee, Jesus Puebla, in the course and scope of his employment and for the serious injuries to Plaintiffs and damages suffered by Plaintiffs.

## FACTS COMMON TO ALL CAUSES OF ACTION

53.    All preceding paragraphs above are incorporated herein as if set forth verbatim.

54.    Plaintiffs bring this suit to recover for damages sustained by Plaintiffs as a result of the

personal injuries to and deaths of Emiliano Godines and Christina Godines resulting from a crash on June 13, 2022, in Weld County, Colorado with a straight truck commercial motor vehicle (CMV) owned by Defendant Carlos Coreas, driven by Defendant Jesus Puebla and, upon information and belief, operated under Defendant Caminantes' operating authority with the Federal Motor Carrier Safety Administration and United States Department of Transportation on behalf of the U.S.P.S.

55.   The FMCSA requires all motor carriers to be properly licensed and insured in order to gain and retain operating authority.

56.   The FMCSA requires minimum financial responsibility requirement through the filing of a MCS 90 Endorsement pursuant to 49 U.S.C.S. 13906(f); 49 C.F.R. § 387.7.

57.   On information and belief, prior to and on the date of June 13, 2022, Defendant STATE FARM was listed as the insurer which had filed an MCS-90 required endorsement with the Federal Motor Carrier Safety Administration (FMCSA).

58.   The MCS 90 Endorsement is a suretyship by the insurance company, here Defendant STATE FARM, to protect the public.

59.   Pursuant to 49 C.F.R. Sections 387.7 and 387.413(d), along with the MCS 90 Endorsement itself, the insurer, Defendant STATE FARM, was required to notify the FMCSA 30 days in advance of cancellation of the insurance policy, which was effectively January 11, 2020.

60.   On information and belief, on February 10, 2020, twenty-eight (28) months prior to the crash which killed Emiliano and Christina Godinez and Aaron Godinez, STATE FARM cancelled or otherwise terminated the insurance policy and coverage for Defendant Caminantes, citing the severe safety violations and unsafe history - making Defendant

Caminantes uninsurable as a motor carrier operating on public roads and highways.

61.     On information and belief, Defendant STATE FARM never notified the FMCSA of the cancellation of insurance at any time, including failing to provide notice thirty (30) days in advance of the cancellation.

62.     On information and belief, Defendant STATE FARM's direct failure to follow applicable federal laws and provide notice of the insurance coverage being terminated prevented the FMCSA from revoking the operating authority of Defendant Caminantes, allowing Defendant Caminantes to continue operating as a motor carrier and contractor with the Defendant UNITED STATES.

63.     Upon information and belief, neither Defendants STATE FARM, Caminantes, nor Defendant UNITED STATES notified the FMCSA that the required insurance endorsement had been terminated and Defendant Caminantes no longer had the required insurance in order to retain operating authority with the FMCSA.

64.     Upon information and belief, Defendant STATE FARM was required by federal law and through the MCS-90 endorsement filed with the FMCSA to notify the FMCSA of the termination of the insurance coverage for Defendant Caminantes.

65.     Upon information and belief, the FMCSA would have been required to immediately terminate or otherwise revoke the operating authority of Defendant Caminantes upon notice of no insurance coverage.

66.     The U.S.P.S. contracts with numerous privately owned trucking companies across the United States to ensure mail is delivered in a timely fashion.

67.     At all times relevant, Defendant UNITED STATES contracted with Defendant Caminantes

on multiple different mail delivery routes across the United States.

68.    Of particular relevance to this case, Defendant UNITED STATES awarded a contract to Caminantes Trucking for the pickup and delivery of mail along the Front Range communities north of Denver, Colorado.

69.    The terms of the contract between Defendants UNITED STATES and Caminantes set forth Defendant UNITED STATES' expectations and control of the daily responsibilities of Defendant Caminantes and its agents and employees.

70.    By its own terms, the contract between Defendants UNITED STATES and Caminantes specified precise locations and precise times of day for Defendant Caminantes to pick up and deliver parcels of mail, and set forth where Defendant Caminantes would transport the mail to, and precisely when the mail was to be delivered.

71.    By its own terms, the contract between Defendants UNITED STATES and Caminantes specified which days of the week and which times of year Defendant Caminantes was to drive particular pick-up and delivery routes.

72.    The terms of the contract between Defendants UNITED STATES and Caminantes also specified which type of vehicle was to be utilized for which particular pick-up and delivery routes.

73.    Upon information and belief, Defendant Caminantes had a Contract for Services with Lucky 22, for Lucky 22 to subcontract for U.S.P.S. deliveries.

74.    Upon information and belief, the U.S.P.S. was aware Defendant Lucky 22 was a subcontractor of Defendant Caminantes.

75.    Upon information and belief, the U.S.P.S. would send Defendant Lucky 22 Contract Route

Vehicle Records after completion of each trip, which detailed information such as the date, Route Number, Schedule (including scheduled times of departure and arrival and how the actual times of departure and arrival compared), details of who checked and sealed the load restraint, who dispatched the load, and the destination and the driver.

76.   Upon information and belief, Defendant Carlos Coreas would speak and correspond with supervisors at the U.S.P.S., Tai Rho and Benita Rodriguez, regarding shipments.

77.   At all times relevant, Defendant Puebla was operating the 1999 Kenworth T800, which was a commercial motor vehicle, requiring a commercial driver's license under C.R.S. § 31-7-304.

78.   The 1999 Kenworth T800 was a commercial motor vehicle, known as a "straight truck" being operated at the time of the crash under the operating authority of Defendant Caminantes, Federal Motor Carrier Safety Administration Motor Carrier No. 00616117 and United States Department of Transportation No. 1676627.

79.   At all times relevant, Defendants Jesus Puebla, Caminantes and Lucky 22 were required to follow all Federal Motor Carrier Safety Regulations and Colorado State Law.

80.   The crash was proximately caused by all Defendants' negligence/negligence per se, recklessness, willfulness, and/or intentional tortious actions.  At such time and place, the straight truck was driven by Defendant Jesus Puebla, who did not have a valid commercial motor vehicle license, qualifications or credentials required by law for the operation of a commercial motor vehicle.

81.   Defendant Puebla failed to keep a proper lookout, failed to maintain a safe and proper stopping distance, was driving recklessly and distracted, and was driving the 1999

Kenworth T800 which had dangerous, defective and unmaintained brakes and safety equipment, which was known to all Defendants.  Defendant Puebla failed to keep a safe stopping distance, failed to slow down and crashed into the rear of the Ford Edge SUV, which was going an estimated 5-10 MPH while Defendant Puebla was traveling at approximately 70 MPH.  Decedents Emiliano and Christina Godines, along with their son Aaron Godinez, their granddaughter T.G. (a minor) and mother of T.G., Halie Everts, were all passengers in a 2015 Ford Edge.

82.   As a result of the collision, Emiliano Godines and Christina Godines, both sustained personal injuries resulting in their deaths at the scene of the crash.  Aaron Godinez, Emiliano and Christina Godines's son, who was driving the Ford Edge, was transported from the scene and later died of injuries he sustained in the collision.  Halie Everts and her minor daughter, T.G., were also passengers in the Ford Edge driven by Aaron Godinez and both sustained fatal injuries in the collision.  All five passengers in the Ford Edge perished as a result of the negligent, reckless, willful, wanton and/or intentional actions of all Defendants.

83.   The injuries and damages suffered by Plaintiffs were directly and proximately caused by the negligence, recklessness, and willful, wanton disregard of the Defendants, individually and acting by and through their servants, agents, and employees, as hereinafter set out.

84.   Upon information and belief, at the time and place in question, Defendant Jesus Puebla was acting as the agent, servant, and/or statutory employee of the UNITED STATES, Defendant Caminantes, Carlos Coreas, and Lucky 22.  Defendants UNITED STATES, Caminantes, Carlos Coreas and Lucky 22, acting through their agents, servants and

employees, in the course and scope of their employment, were guilty of acts of negligence and/or negligence per se, recklessness, willfulness and/or intentional acts, each of which jointly and severally proximately caused the injuries to and deaths of Emiliano and Christina Godines, Aaron Godinez and the damages suffered by Plaintiffs.

85.   Upon information and belief, Defendant Jesus Puebla received a citation for operating a Commercial Motor Vehicle without a Commercial Driver's License (CDL) several months prior to the June 13, 2022 crash.

86.   Upon information and belief, prior to June 13, 2022, Defendants UNITED STATES, Caminantes, Carlos Coreas, and Lucky 22, knew or should have known that Defendant Puebla was operating a commercial motor vehicle owned and/or operated by and through their operating authority with the Federal Motor Carrier Safety Administration and the United States Department of Transportation. Defendants UNITED STATES, Caminantes, Carlos Coreas, and Lucky 22 negligently, recklessly, and willfully encouraged, allowed and compensated Defendant Puebla to continue driving the 1999 Kenworth T800 commercial motor vehicle without a valid license, and commercial motor vehicle training.

87.   Upon information and belief, Jesus Puebla was again cited for operating a Commercial Motor Vehicle without a Commercial Driver's License on June 13, 2022.

88.   Upon information and belief, on June 13, 2022, Jesus Puebla was cited for operating a Commercial Motor Vehicle without a valid medical certificate and did not in fact have a valid CDL or medical certificate required by law.

89.   Upon information and belief, Defendants UNITED STATES, Caminantes, Carlos Coreas and Lucky 22 were aware Defendant Jesus Puebla did not have a current Commercial

Driver's License and authorized him to drive a Commercial Motor Vehicle in the furtherance of their "for profit" businesses.

90. Upon information and belief, Defendants UNITED STATES, Caminantes, Carlos Coreas and Lucky 22 were aware Defendant Jesus Puebla did not have a valid medical certificate and authorized him to drive a Commercial Motor Vehicle.

91. Upon information and belief, prior to June 13, 2022, Defendants UNITED STATES, Caminantes, Carlos Coreas and Lucky 22 were aware Defendant Jesus Puebla had been cited by law enforcement for not having a valid Commercial Driver's License and the Defendant authorized him to drive a Commercial Motor Vehicle.

92. Upon information and belief, Defendant Jesus Puebla had previously been convicted of Driving a Defective/Unsafe Vehicle on two occasions: August 13, 2019 and May 2, 2016.

93. Upon information and belief, Defendant Jesus Puebla had previously been convicted of Reckless Driving on April 9, 2015.

94. A reasonably prudent motor carrier in the position of Defendants UNITED STATES, Caminantes and Lucky 22 would ensure its drivers are properly licensed to operate Commercial Motor Vehicles and possess valid medical certificates before allowing them to operate such vehicles.

95. A reasonably prudent broker and/or shipper in the position of the Defendant UNITED STATES would have found through due diligence that Defendant Caminantes had an egregious safety history with hundreds of reported safety violations prior to June 13, 2022, and would have 1) Rejected and revoked renewal of the contract with Defendant Caminantes, and/or 2) Terminated the contract with Defendant Caminantes prior to the

crash on June 13, 2022.

96. Defendants UNITED STATES, Caminantes and Lucky 22 had a duty to act as reasonably prudent motor carriers.

97. Defendants UNITED STATES, Caminantes and Lucky 22 breached this duty when they did not require their driver have a valid Commercial Driver's License or medical certificate.

98. Defendants UNITED STATES, Caminantes and Lucky 22's failure to act as reasonably prudent motor carriers was a direct and proximate cause of the subject crash.

99. Defendants UNITED STATES, Caminantes, Carlos Coreas and Lucky 22's actions in sending a driver out onto public roadways for their business purposes without confirming he was properly licensed was negligent, reckless, willful and/or intentional.

100. Upon information and belief, at the time of the subject crash, the straight truck under the custody and control of Defendants UNITED STATES, Caminantes, Carlos Coreas and Lucky 22, had defective and unmaintained brakes constituting more than twenty percent of all service brakes on the vehicle.

101. Upon information and belief, at the time of the subject crash, the straight truck under the custody and control of Defendants UNITED STATES, Caminantes, Carlos Coreas, and Lucky 22, was not equipped with an Antilock Brake System.

102. Upon information and belief, at the time of the subject crash, the straight truck under the custody and control of Defendants UNITED STATES, Caminantes, Carlos Coreas, and Lucky 22, had clamp or roto-type brakes out of adjustment which constituted a danger to the driver of the vehicle and the traveling public.

103. Upon information and belief, at the time of the subject crash, the straight truck under the custody and control of Defendants UNITED STATES, Caminantes, Carlos Coreas, and Lucky 22, had an automatic airbrake adjustment system that failed to compensate for wear, making the truck dangerous and unsuitable for the transportation of goods on the roadways.

104. A reasonably prudent motor carrier would ensure the brakes on its Commercial Motor Vehicles are compliant with Federal and Colorado State Regulations.

105. Defendants UNITED STATES, Caminantes and Lucky 22 negligently, recklessly, and/or intentionally breached this duty when it did not ensure the subject straight truck had compliant brakes.

106. Defendant UNITED STATES, Caminantes and Lucky 22's failure to act as a reasonably prudent motor carrier was a direct and proximate cause of the subject crash.

107. Defendants UNITED STATES, Caminantes, Carlos Coreas, and Lucky 22's actions in sending a vehicle out onto public roadways for its business purposes without compliant brakes was reckless and outrageous.

108. Upon information and belief Defendant Jesus Puebla was distracted while operating a commercial motor vehicle with defective brakes and without a CDL on public roadways for business purposes.

109. Jesus Puebla's conduct in operating a commercial motor vehicle with defective brakes and without a CDL on public roadways for business purposes while distracted was reckless and outrageous.

110. Defendant Jesus Puebla's conduct in operating a commercial motor vehicle with defective brakes and without a CDL on public roadways for business purposes while distracted was

the proximate cause of the deaths of Emiliano Godines, Christina Godines, Aaron Godinez, Halie Everts and T.G.

111.   Defendant Jesus Puebla was charged with at least five felony counts, including felonious vehicular homicide for the deaths of Emiliano Godines, Christina Godines, Aaron Godinez, Halie Everts and T.G.

112.   Defendant Jesus Puebla's actions on June 13, 2022, constitute felonious vehicular homicide.

113.   Defendants UNITED STATES, Caminantes, Lucky 22 and Carlos Coreas' hiring of Defendant Jesus Puebla, along with the failures to train and supervise as required by the FMCSA and State laws were done in a reckless, willful, wanton and/or intentional manner.

## CHOICE OF LAW

114.   Plaintiffs are domiciled in the State of Wyoming, and the decedents were also domiciled in the State of Wyoming. Because of their residency in Wyoming and the fact that the decedents were traveling home to Wyoming at the time of the crash, a question of law exists whether Colorado's conflict of laws principles favor applying Wyoming's law governing wrongful death in this case.

115.   For determination of damages under choice of law and conflict of law principles, the more significant relationship is the plaintiffs reside in Wyoming and the decedents also lived there. The decedents' purpose was to visit Colorado for leisure and return to Wyoming. The crash occurred on I-25, North of Denver, as the decedents were traveling home to Wyoming. Furthermore, Wyoming has a strong interest in seeing that its citizens are fully compensated for their injuries. There exists a conflict of laws between Colorado law and

Wyoming law on the issue of limitations on non-economic damages in actions for wrongful death. Wyoming does not recognize any limitations on non-economic damages in actions for wrongful death.

116. Under the more significant relations test, there is a conflict of laws and Wyoming substantive law on wrongful death damages should apply such that there are no limitations on non-economic damages.

## FIRST CLAIM FOR RELIEF

### *(Negligence of STATE FARM Mutual Automobile Insurance Company)*

117. All relevant portions of this Complaint are incorporated herein as if fully set forth.

118. The FMCSA and the Motor Carrier Act (MCA) required Defendant Jose Coreas, DBA "Caminantes Trucking" to maintain "minimum levels of financial responsibility" as prescribed by the Secretary of Transportation. 49 U.S.C. § 31139(b)(1).

119. In order to comply with this MCA requirement, certain motor carriers must register with the Secretary of Transportation by filing "a bond, insurance policy, or other type of security approved by the Secretary." 49 U.S.C. § 13906(a)(1).

120. When this insurance policy requirement applies, motor carriers usually "obtain a specific endorsement to one or more of their insurance policies – the MCS-90 endorsement – which guarantees payment of minimum amounts, as set forth in the regulations, to an injured member of the public." *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 870 (10th Cir. 2009) (citing 49 C.F.R. §§ 387.7, 387.9).

121. That the plain meaning of the endorsement covers non-owned vehicles comports also with the public policy of the endorsement, which is to protect members of the public injured or

killed in collisions from financially irresponsible truckers by providing that all trucking companies carry insurance adequate to satisfy judgments against them. *See* 49 C.F.R. § 387.1. Green v. Royal Indem. Co., No. 93CIV4335(MBM), 1994 WL 267749, at *6 (S.D.N.Y. June 15, 1994).

122. The MCS-90 endorsement "creates a duty running from the insurer to members of the public, regardless of any limitation in the insurance policy between the insurer and the insured" (Green v. Royal Indem. Co., 1994 WL 267749).

123. Once a motor carrier is registered, its approved insurance policy can only be cancelled after proper notice is provided to the Secretary of Transportation "sufficiently in advance of actual cancellation." 49 U.S.C. § 13906(e). This requirement is in place "to enable the Secretary to promptly revoke the registration of any carrier or broker after the effective date of the cancellation." *Id*.

124. On February 10, 2020, approximately twenty-eight (28) months prior to the crash, Defendant STATE FARM revoked, cancelled or otherwise terminated its policy and coverage for Defendant Caminantes Trucking.

125. Upon information and belief, Defendant STATE FARM never notified the Secretary of Transportation notice of intended cancellation or actual cancellation of the insurance coverage as stated in the MCS-90 endorsement.

126. Defendant STATE FARM's failure to comply with federal law to notify the Secretary of Transportation prevented the Secretary to promptly revoke the registration of Defendant Caminantes Trucking.

127. Defendant STATE FARM's failure to notify the Secretary of Transportation allowed

Defendant Caminantes to continue operating as a motor carrier on public roads and highways throughout Colorado and the United States for approximately 790 days, with an estimated 90 power units, and seven-figure a year contracts with the U.S.P.S., all with no insurance coverage as required by the Motor Carrier Act, Federal Motor Carrier Safety Regulations, and federal and state laws.

128. Defendant STATE FARM's negligent acts and omissions in notifying the Secretary of Transportation thereby allowed Defendant Caminantes Trucking to continue operating commercial motor vehicles and maintain operating authority.

129. Upon information and belief, up until the date of the crash on June 13, 2022, Defendant STATE FARM had not yet notified the Secretary of Transportation of the cancellation of insurance coverage as result of Defendant Caminantes' egregious safety history with more than 300 safety violations, and the FMCSA's SAFER website still showed the Defendant Caminantes had a current and up-to-date MCS-90 endorsement from Defendant STATE FARM.

130. Upon information and belief, FMCSA's Safety and Fitness Electronic Records System (SAFER) website still indicates that Defendant STATE FARM is insuring Defendant Caminantes and its policy is still active.

131. Defendant STATE FARM's negligent acts and omissions constituted a complete breakdown of the rules, regulations and requirements set forth in the MCA and by the United States Department of Transportation and the Federal Motor Carrier Safety Administration, to ensure that unsafe motor carriers without minimum insurance requirements have their operating authority revoked to protect the traveling public.

132.   Defendant STATE FARM's negligent acts and omissions resulted in preventing the Federal Motor Carrier Safety Administration from revoking Defendant Caminante's operating authority.

133.   Defendant STATE FARM's negligent acts and omissions resulted in whole or in part Defendant UNITED STATES' (U.S.P.S.) decision to renew yearly contracts for the shipment and delivery of U.S. Mail by Defendant Caminantes prior to the crash on June 13, 2022.

134.   Defendant STATE FARM's negligent acts and omissions constituted a breakdown of the federal rules, regulations, protections and laws in place to protect the traveling public, including the Plaintiffs, from the foreseeable harm created by the uninsured and unsafe motor carrier Defendant Caminantes.

135.   Consequently, Defendant STATE FARM is liable for its negligent, reckless, willful, wanton acts and omissions and for causing Plaintiffs' resulting injuries and damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages pursuant to the applicable wrongful death statute and this Complaint.

## SECOND CLAIM FOR RELIEF

### *(Fraud – State Farm)*

136.   All relevant portions of this Complaint are incorporated herein as if fully set forth.

137.   On February 11, 2020, approximately twenty-eight (28) months prior to the crash, Defendant STATE FARM revoked, cancelled or otherwise terminated its policy and coverage for Defendant Caminantes.

138.   Defendant STATE FARM's failure to notify the Secretary of Transportation of the notice

of intended cancellation or actual cancellation of the insurance coverage as stated in the MCS-90 endorsement constitutes fraud.

139.  By failing to notify the Secretary of Transportation and allowing the USDOT and FMCSA to rely upon the misrepresentation that Jose Coreas d/b/a Caminantes Trucking was insured, caused the FMCSA to rely upon this false representation, which would have otherwise caused the FMCSA and USDOT to revoke the operating authority of Defendant Jose Coreas d/b/a Caminantes Trucking.

140.  Further, the misrepresentation directly led to the Defendant UNITED STATES (U.S.P.S.) contracting with Defendant JOSE COREAS d/b/a CAMINANTES trucking and leading to the transportation and shipment of U.S. Mail by Defendant Jesus Puebla and the crash killing all five occupants on June 13, 2022.

141.  Defendant STATE FARM's fraudulent acts and omissions thereby allowed Defendant Caminantes to continue operating commercial motor vehicles and maintain operating authority.

142.  Up until the date of the crash on June 13, 2022, Defendant STATE FARM had not yet notified the Secretary of Transportation and the FMCSA's SAFER website still showed that Defendant Caminantes had a current and up-to-date MCS-90 endorsement from Defendant STATE FARM.

143.  Defendant STATE FARM's negligent acts and omissions constituted a breakdown of the rules, regulations and requirements set forth in the MCA and by the United States Department of Transportation and the Federal Motor Carrier Safety Administration, to ensure that unsafe motor carriers without minimum insurance requirements have their

operating authority revoked to protect the traveling public.

144.     Defendant STATE FARM's fraudulent acts and omissions directly led to the U.S.P.S. to maintain yearly contracts for the shipment and delivery of U.S. Mail by Defendant Caminantes.

145.     Defendant STATE FARM's fraudulent acts and omissions constituted a breakdown of the rules, regulations, protections and laws in place to protect the traveling public, including the Godines family from the foreseeable harm created by uninsured and unsafe motor carriers.

146.     Consequently, Defendant STATE FARM is liable for its fraudulent, negligent, reckless, willful, wanton acts and omissions and for causing Plaintiffs' resulting injuries and damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as determined by the applicable state wrongful death statutes and laws and this Complaint.

## **THIRD CLAIM FOR RELIEF**

### *(Negligent Selection of a Contractor - Defendant UNITED STATES)*

147.     All relevant portions of this Complaint are incorporated herein as if fully set forth.

148.     Upon information and belief, Defendant UNITED STATES, hired, contracted or otherwise selected Defendants Caminantes, Carlos Coreas, and Lucky 22, as the motor carriers to transport and/or ship the load of cargo contained within the box truck on June 13, 2022.

149.     Upon information and belief, Defendant UNITED STATES, failed to properly and prudently inspect, investigate and select Defendants Caminantes, Carlos Coreas and Lucky 22 as a safe and properly qualified motor carriers.

150.   Upon information and belief, Defendant Caminantes' publicly available safety data on the FMCSA's SAFER website revealed that out of 304 inspections, 376 violations were found. Furthermore, Defendant Caminantes had an out of service rating of 24.7% - exceeding the national average of 21.4%. Additionally, the FMCSA's publicly available data for Defendant Lucky 22 showed an out of service rating of 100% - meaning that every vehicle in their fleet was unsafe to be operated on public roads. Finally, both carriers entrusted the Straight Truck to a driver who did not have a CDL – Defendant Puebla.

151.   Defendant UNITED STATES is liable for the negligent acts and omissions in selecting Defendant Caminantes Trucking as a motor carrier to ship and transport U.S. Mail.

152.   Defendant UNITED STATES' by and through its servants, agents and employees negligent, reckless and outrageous actions in hiring, brokering, and/or selecting Defendants Caminantes, Carlos Coreas and Lucky 22 to provide for the transportation of goods resulted in the deaths of Emiliano and Christina Godines and Aaron Godinez and caused damages to Plaintiffs.

153.   Upon information and belief, Defendant UNITED STATES knew or should have known that Defendants Caminantes, Carlos Coreas and Lucky 22, were unsafe, unqualified, and incompetent in operating their commercial motor vehicles on the public roadways among the motoring public.

154.   Upon information and belief, Defendant UNITED STATES failed to exercise ordinary care to investigate and reasonably vet Defendants' Caminantes, Carlos Coreas and Lucky 22, and ascertain said Defendants' competence and qualifications in its commercial vehicle operation. Had Defendant UNITED STATES followed the U.S.P.S.' own rules,

regulations, policies and procedures and exercised ordinary care in investigating and selecting Defendants Caminantes, Carlos Coreas and Lucky 22, Defendant UNITED STATES would have learned said defendants were not competent motor carrier(s) to safely transport goods on a public highway, including the facts reasonably available through the Federal Motor Carrier Safety Administration's SAFER and CMS databases that Defendant Caminantes had hundreds of serious safety violations over the past two years, including several other instances of dangerous and defective brakes, unlicensed drivers and ten crashes since July 2020, including a fatality crash in California on April 22, 2021.

155. Upon information and belief, Defendant UNITED STATES ignored, or chose not to follow its own policies and procedures to ensure the safe selection of a motor carrier to transport United States mail. Furthermore, upon information and belief, Defendant UNITED STATES ignored, or chose not to follow its own policies and procedures to safely select and permit its contractors to utilize subcontractors for the delivery and transport of United States mail.

156. Defendant UNITED STATES' negligent acts and omissions were not subject to a discretionary function but rather a failure to follow established law, rules, policies, procedures and requirements.

157. Therefore, a reasonably prudent transportation shipper, such as the Defendant UNITED STATES in this instance, would not have hired, brokered and/or selected Caminantes and/or Lucky 22 to transport property on Colorado roadways, including the load that Defendant Jesus Puebla was transporting.

158. Upon further information and belief, Defendant UNITED STATES failed to ensure that

Defendant Caminantes and/or Defendant Lucky 22 employed or otherwise authorized Defendant Puebla to operate a commercial motor vehicle without a valid license, training, qualifications and medical certificate.

159.   Upon information and belief, Defendant UNITED STATES, knew or should have known that Defendant Puebla was cited approximately three months prior to the fatal crash on June 13, 2022, for operating a commercial motor vehicle without a valid commercial drivers' license.

160.   Plaintiffs were severely and permanently damaged as a result of Defendant UNITED STATES' incompetence, recklessness and negligence in investigating and selecting Defendants Caminantes, Carlos Coreas and Lucky 22 to transport goods in a commercial motor vehicle on the public roadways with their poor safety rating, poor safety history and lack of insurance.

161.   Had Defendant UNITED STATES exercised ordinary care in investigating Defendants Caminantes and Lucky 22, it would have learned that neither motor carrier was competent to safely transport goods in a commercial motor vehicle on the public roadways.

162.   The negligence and/or recklessness of Defendant UNITED STATES in investigating, brokering, selecting, contracting and/or hiring Defendant Caminantes and Lucky 22 to operate the commercial motor vehicle involved in this crash was a proximate cause of the collision in which Emiliano and Christina Godines and Aaron Godinez were killed.

### **FOURTH CLAIM FOR RELIEF**

### *(Vicarious Liability of the United States)*

163.   All relevant portions of this Complaint are incorporated herein as if fully set forth.

164.   Upon information and belief, Defendant UNITED STATES had the right to control the manner of work performed, the right to discharge, the method of payment, and/or the level of skill involved, the types of vehicles to be used, pick-up and delivery times and locations, among other things, with respect to Defendant Caminantes and Lucky 22 and the transportation of this load.

165.   At all times relevant hereto, Defendant UNITED STATES acted through their employees or agents who were acting within the scope of their employment or agency with UNITED STATES according to internal rules, requirements, regulations and established policies.

166.   At all times relevant hereto, Defendant UNITED STATES was aware that failure to hire, train, supervise, and/or timely discharge employees and agents could result in serious, permanent, and life altering/life ending injuries to individuals.

167.   At all times relevant hereto, Defendant UNITED STATES was required to supervise and monitor their employees and their drivers to ensure they maintained adequate skills to drive professionally and commercially.

168.   At all times relevant hereto, Defendant UNITED STATES was aware that drivers they employed were required to be skilled and trained in operating commercial vehicles, or individuals on the road could be seriously harmed or killed.

169.   At all times relevant hereto, Defendant UNITED STATES was aware that they had a duty to investigate and evaluate the background of their potential drivers, as well as their current drivers, to make sure their driving records were consistent with individuals who would be professionally driving vehicles, including box trucks and other commercial motor vehicles.

170.   Because Defendant UNITED STATES agreed to be responsible for the transportation of

goods under its/their federal motor carrier operating authority and to be responsible for the transportation of the goods in interstate commerce, Defendant UNITED STATES was a "motor carrier" and "employer" under federal statutes and regulations.

171. Consequently, Defendant UNITED STATES stepped into the shoes of the employer of Defendants Caminantes, Lucky 22, Inc. and Jesus Puebla, and under the principles of *agency* is liable for the acts and omissions of Defendant Caminantes and/or Lucky 22 and for Plaintiffs' resulting injuries and damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in the applicable wrongful death statute and this Complaint.

### FIFTH CLAIM FOR RELIEF

### *(Negligence of Defendant Jose Mauricio Coreas d/b/a Caminantes Trucking)*

172. All relevant portions of this Complaint are incorporated herein as if fully set forth.

173. Upon information and belief, Defendant Caminantes conducts trucking operations throughout the United States, but they frequently rely on smaller regional carriers and local owner operators, especially when their customers' needs cannot be met by Defendant Caminantes' own fleet.

174. Upon information and belief, Defendant Caminantes and its agents regularly contract with regional and local trucking companies for purposes of satisfying Caminantes' contractual obligations as a carrier and the commitments Defendant Caminantes makes to its customers.

175. Defendant Caminantes has an obligation and duty to determine whether the regional and local trucking companies upon which it relies to complete its contracts of carriage are safe,

reliable, and conduct their operations in compliance with relevant Federal and State safety regulations.

176.   Thus, at all relevant times, Defendant Caminantes had an obligation and a duty to exercise reasonable care in the control and oversight of the trucking company it selected to satisfy its contractual obligation to U.S.P.S. to deliver the shipment that ultimately was assigned to Defendant Lucky 22 and to Defendant Puebla for transport.

177.   At all relevant times Defendant Caminantes held itself as the motor carrier for shipment and was subject to the FMCSA and all federal regulations.

178.   Upon information and belief, Defendant Caminantes was hired by or contracted with the United States for the shipment of U.S.P.S. mail and freight and as a result Caminantes was a "hidden motor carrier" responsible under the FMCSA and USDOT for compliance with all Federal and State laws and regulations for the shipment of the load on June 13, 2022.

179.   At all relevant times Defendant Caminantes was obligated to transport the shipment pursuant to its contract with Defendant UNITED STATES (U.S.P.S.) and all applicable FMCSRs.

180.   At all times relevant to this cause of action, Defendant Caminantes was subject to and required to obey the minimum safety standards established and set forth in the FMCSRs, 49 CFR Parts 300-399, either directly or as adopted by the Colorado State Patrol Rules and Regulations Concerning Minimum Standards for the Operation of Commercial Vehicles 8 CCR 1507-1:MCS 6 and pursuant to Colo. Rev. Stat. § 42-4-235(4)(a).

181.   At all relevant times, Defendant Caminantes also had an obligation and a duty to exercise reasonable care in the management and control of the transport of those loads it contracted

to deliver, and as the contracting trucking company it had a non-delegable duty to comply with relevant Federal safety regulations.

182.   At all relevant times, Defendant Caminantes had a duty to conduct a due diligence safety review before contracting with any local trucking company.

183.   Defendant Caminantes had the capacity and ability to determine whether the regional and local trucking companies upon which it relies to complete its contracts of carriage are safe, reliable, and conduct their operations in compliance with relevant Federal and State safety regulations, as such information is readily available through the FMCSA and other resources regularly relied upon in the trucking and logistics industry.

184.   It is part of the minimum standards for companies like Defendant Caminantes to make safety inquiries as part of qualifying and retaining trucking companies before contracting with them.

185.   It is part of the minimum standards for companies like Defendant Caminantes to make safety inquiries on a regular basis after contracting with a trucking company.

186.   Upon information and belief, the owners of Defendants Caminantes and Lucky 22, were father and son, and acted in an orchestrated manner to subvert the rules, regulations and laws of the FMCSA, USDOT and the State of Colorado.

187.   At all relevant times, on information and belief, Defendant Caminantes had had prior dealings with Defendants Lucky 22 and Jesus Puebla and knew or had reason to know that they required and permitted drivers to operate commercial motor vehicles in violation of the FMCSR CDL requirements and required and permitted drivers to operate commercial motor vehicles without providing a FMCSR required medical certificate.

188.  At all relevant times, Defendant Caminantes was acting through his/their employees and/or agents and are responsible for the acts of those employees and/or agents pursuant to respondeat superior, agency, vicarious liability, statutory employment doctrines, negligent entrustment, negligent hiring of an independent contractor, partnership, joint enterprise, and/or other similar theories of law.

189.   At all relevant times, Defendant Caminantes was the motor carrier.

190.  At all relevant times, Lucky 22 was the sub-carrier.

191.  On or before June 13, 2022, the FMCSA made information available to the public regarding Lucky 22's safety record.  This information found that only two inspections had been conducted of the carrier, with inspectors finding problems in one of the two inspections.

192.  The same publicly available information indicated that Lucky 22 had an out of service rating of 100 percent, which means that every single Lucky 22 vehicle could not pass safety inspections and was placed "out of service," meaning they were unsafe to operate on public roadways.  It also suggested that there was a 100% chance that any vehicle dispatched by Lucky 22 would not be able to meet delivery schedules, either due to an actual mechanical breakdown or due to a random roadside inspection resulting in an out-of-service violation.

193.  More importantly, however, the publicly available information revealed that Lucky 22 was not only sub-standard in the area of safe operations, but that Lucky 22 did not have current for-hire operating authority with the FMCSA.

194.  Despite knowing, or having reason to know of Lucky 22's substandard safety records and the critical fact that it did not have current for-hire operating authority with the FMCSA,

Defendant Caminantes nonetheless negligently, carelessly and recklessly retained, hired, supervised, and/or contracted with Lucky 22 before negligently entrusting Lucky 22 to make a time sensitive interstate delivery of United States Mail on behalf of the U.S.P.S. while knowing or having reason to know that it would inevitably result in safety risks to the public, including to Emiliano Godines, Christina Godines, and Aaron Godinez.

195.   At all relevant times, Defendant Caminantes had the capacity, ability, and duty to exercise direct control over the specific details of transport of the subject delivery, including logistics, dispatching, scheduling, rescheduling, route planning, rerouting, and load consolidation, as well as compliance with relevant Federal safety regulations.

196.   Defendants Caminantes and Lucky 22 and/or Defendants Carlos Coreas (collectively, the Joint Venturers") operated a joint enterprise and/or joint venture for the transport of freight under which they shared control and profits arising out of the transport of such goods, under which, Jesus Puebla and/or Lucky 22 and/or Carlos Coreas were Caminantes' agents, employees, and/or joint venturers such that Caminantes was responsible for their acts and omissions pursuant to respondeat superior, agency, vicarious liability, statutory employment doctrines, negligent hiring of an independent contractor, partnership, joint enterprise, and/or other similar theories of law.

197.   At all relevant times, Defendant Caminantes had actual and/or constructive knowledge that Defendant Puebla was, in fact, driving the Lucky 22 commercial motor vehicle in violation of Federal safety regulations, including FMCSR out-of-service rules, in the course of fulfilling Caminantes' contractual obligations and while under Caminantes' direct supervision and control, but made no attempt to reschedule the load delivery or otherwise

adjust the delivery schedule in order to afford Jesus Puebla a reasonable opportunity to remain in compliance with FMCSR CDL and medical certificate requirements, all in violation of Caminantes' direct and non-delegable obligations under applicable law including federal safety regulations.

198. As a direct and proximate result of Defendant Caminantes' negligent, careless, and/or reckless conduct as alleged herein, Defendant Puebla was aided, abetted, and induced into working without being properly licensed to operate a commercial motor vehicle, all of which proximately caused the June 13, 2022 wreck and the injuries and deaths of Emiliano Godines, Christina Godines and Aaron Godinez.

199. Defendant Caminantes, knew, had reason to know, or should have known by exercising reasonable care, about the risks set forth in this complaint and that by simply exercising reasonable care these risks would be reduced or eliminated. These risks include, but are not limited to:

   a. The risks associated with unsafe trucking companies;

   b. The risks associated with trucking companies that fail to have adequate risk management policies and procedures in place;

   c. Failing to ensure the trucking company had current for-hire operating authority with the FMCSA;

   d. Failing to have policies and procedures in place to identify unsafe trucking companies;

   e. Failure to appropriately implement and enforce risk management policies and procedures to monitor and assess Lucky 22 once hired;

f.   Failing to implement and follow a written safety plan;

g.   Failing to protect the members of the public, such as the Plaintiffs, from the risks described above;

h.   Failing to ensure that Defendant Puebla was prudently hired, trained, and supervised to operate a CMV;

i.   Failing to use the composite knowledge reasonably available to Defendants to analyze the data available to it to identify the risk, take steps to reduce or eliminate the risk, and to protect members of the public from that risk;

j.   Failing to appropriately implement and enforce risk management policies and procedures to identify the risks described above.

200.   By reason of, and as a direct and proximate result of Caminantes' breaches of the above duties.  which were a cause of the injuries and deaths of Christina Godines, Emiliano Godines, and Aaron Godinez the claimants have suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as set forth in the applicable wrongful death statute and this Complaint.

## **SIXTH CLAIM FOR RELIEF**

### *(Successor Liability of Caminante Logistics, Inc.)*

201.   All relevant portions of this Complaint are incorporated herein as if fully set forth.

202.   On August 4, 2022, less than two months after the underlying crash at issue in this lawsuit, a new company sharing both the same name and address as Defendant Caminantes Trucking was formed in California.

203.   The company, named "Caminante Logistics, Inc.," maintains the address of 2105 W 15th

St., Long Beach, CA 90813 – the same address as Defendants Caminantes Trucking and Paris West Trucking.

204. Defendant Caminante Logistics, Inc. has the USDOT number 4025025 and reports ownership of five (5) power units on the USDOT Company Snapshot.

205. The formation of this new entity, which bears the same physical address and nearly identical name to Defendant Caminantes occurred less than two months immediately following the June 13, 2022 crash at issue in this case.

206. Upon information and belief, Defendant Caminante Logistics, Inc., is a mere continuation of Defendant Caminantes Trucking, and was in all likelihood formed shortly after the crash at issue in this case for purposes of escaping liability for the harms caused by Defendant Caminantes.

207. Consequently, Defendant Caminante Logistics, as the successor entity, is liable for the acts and omissions of Defendant Caminantes and for Plaintiffs' resulting injuries and damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in the applicable wrongful death statute and this Complaint.

## SEVENTH CLAIM FOR RELIEF

### *(Negligence and/or Recklessness of Defendant Jesus Puebla)*

208. All preceding paragraphs above are incorporated herein as if set forth verbatim.

209. Emiliano Godines, Christina Godines and Aaron Godinez died as a result of fatal injuries sustained when they were struck by Caminantes straight truck, driven by Jesus Puebla.

210. Emiliano Godines, Christina Godines and Aaron Godinez's deaths were caused by the reckless and/or negligent driving conduct of Jesus Puebla at the time of the subject incident.

211. Emiliano Godines, Christina Godines and Aaron Godinez were not negligent or at-fault in any way at the time of, and immediately prior to, the subject incident resulting in their deaths.

212. As a result of Jesus Puebla's recklessness and/or negligence, which caused the wrongful deaths of Emiliano Godines, Christina Godines and Aaron Godinez, their son and brother Christian Godinez and daughter and sister Abigail Godinez both sustained mental, emotional and psychological injuries, damages, and losses, including, but not limited to, economic losses and non-economic losses.

213. As a direct and proximate result of Emiliano Godines, Christina Godines and Aaron Godinez's deaths, their children and siblings (the Plaintiffs) have suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in this Complaint and Wyoming's wrongful death statute.

## EIGHTH CLAIM FOR RELIEF

### *(Negligence Per Se of Jesus Puebla)*

214. All relevant portions of this Complaint are incorporated herein as if fully set forth.

215. Defendant Jesus Puebla, through his negligent, careless, reckless and wrongful acts and omissions, violated applicable codes, ordinances, regulations and/or statutes of the State of Colorado or the United States including, but not limited to, the following:

    a.  Colorado Revised Statutes § 42-4-1008, Following too closely;

    b.  Colorado Revised Statutes § 42-4-1401, Reckless Driving;

    c.  Colorado Revised Statutes § 42-4-1402, Careless Driving;

    d.  Colorado Revised Statutes § 18-3-106(1)(a), Vehicular homicide;

216. The purpose of the aforementioned codes, ordinances, regulations and statutes was to protect against the type of injuries and damages Plaintiffs sustained as a result of this incident.

217. Plaintiffs were members of the group of persons that the aforementioned codes, ordinances, regulations and/or statutes were intended to protect.

218. Consequently, Defendant's conduct complained of herein constitutes negligence *per se.*

219. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs suffered injuries, losses and damages as described herein.

220. As a direct and proximate result of the negligence *per se* of Defendant Jesus Puebla, Emiliano and Christina Godines and Aaron Godinez were killed.

221. As a direct and proximate result of Emiliano and Christina Godines and Aaron Godinez's deaths, their children and siblings (the Plaintiffs) have suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in Wyoming's wrongful death statute and in this Complaint.

## NINTH CLAIM FOR RELIEF

### *(Vicarious Liability of Lucky 22)*

222. All relevant portions of this Complaint are incorporated herein as if fully set forth.

223. Upon information and belief Jesus Puebla was an employee of Defendant Lucky 22.

224. Defendant Lucky 22 was acting as employer and principal of Jesus Puebla at the time of the subject incident.

225. Jesus Puebla was acting within the course and scope of his employment at the time of the subject incident.

226. By virtue of Jesus Puebla being an employee of Defendant Lucky 22, and because he was acting within the scope of his employment at the time of the crash, the acts and omissions of Jesus Puebla are deemed to be the acts and omissions of Defendant Lucky 22 under the doctrine of *Respondeat Superior*.

227. Consequently, Defendant Lucky 22 is liable for the acts and omissions of Defendant Jesus Puebla and for Plaintiffs' resulting injuries and damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in Wyoming's wrongful death statute and this Complaint.

## TENTH CLAIM FOR RELIEF

### (*Negligent and/or Reckless Training and Supervision by Defendant Lucky 22*)

228. All relevant portions of this Complaint are incorporated herein as if fully set forth.

229. At all times material hereto, Defendant Jesus Puebla served as an employee of, and for, Defendant Lucky 22.

230. Defendant Jesus Puebla was acting within the course and scope of his employment with Defendant Lucky 22 at the time of the subject incident.

231. Defendant Lucky 22 had a duty of reasonable care owed to Plaintiffs and other members of the public to properly train and supervise its employees, particularly employees such as Defendant Jesus Puebla whose job duties included the operation of motor vehicles, especially straight trucks and tractor-trailer trucks, on public highways.

232. Defendant Lucky 22 breached its duty to properly train and supervise Defendant Jesus Puebla.

233. Defendant Lucky 22's failure to exercise reasonable care in properly training and

supervising Defendant Jesus Puebla constitutes negligence and/or recklessness which directly and proximately caused Plaintiffs to suffer injuries, losses, and damages.

234. As a direct and proximate result of the negligent and/or reckless training and supervision of Defendant Jesus Puebla by Defendant Lucky 22, Emiliano and Christina Godines and Aaron Godinez were killed.

235. As a direct and proximate result of Emiliano and Christina Godines and Aaron Godinez's deaths, their surviving children and siblings (the Plaintiffs) have suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in Wyoming's wrongful death statute and this Complaint.

## ELEVENTH CLAIM FOR RELIEF

### *(Outrageous Conduct of Jesus Puebla)*

236. All relevant portions of this Complaint are incorporated herein as if fully set forth.

237. Defendant Jesus Puebla engaged in extreme and outrageous conduct by operating a CMV on public highways without a Commercial Driver's License or valid medical certificate.

238. Defendant Jesus Puebla engaged in extreme and outrageous conduct by operating a CMV on public highways with defective and unsafe brakes.

239. Defendant Jesus Puebla engaged in extreme and outrageous conduct by operating a CMV on public highways in a distracted and unsafe manner.

240.  Defendant Jesus Puebla's conduct of operating a CMV on public highways without a Commercial Driver's License or valid medical certificate was reckless.

241. Defendant Jesus Puebla's conduct of operating a CMV on public highways with defective and unsafe brakes was reckless.

242. Defendant Jesus Puebla's conduct of operating a CMV on public highways in a distracted and unsafe manner was reckless.

243. Defendant Jesus Puebla's extreme and outrageous conduct recklessly resulted in the crash killing Emiliano Godines, Christina Godines, Aaron Godinez, Halie Everts and Aaron and Halie's minor daughter, T.G. These individuals were the Plaintiffs' father, mother, brother, future sister-in-law and niece, respectively. The reckless killing of their family caused the Plaintiffs, Christian and Abigail Godinez, severe emotional distress.

244. As a result of the crash, Defendant Puebla was cited for *felonious vehicular homicide* for the deaths of Emiliano Godines, Christina Godines, Aaron Godinez, Halie Everts and Aaron and Halie's minor daughter, T.G.

### TWELFTH CLAIM FOR RELIEF

#### *(Outrageous Conduct of Caminantes Trucking)*

245. All relevant portions of this Complaint are incorporated herein as if fully set forth.

246. Defendant Caminantes engaged in extreme and outrageous conduct by knowingly permitting the operation of a CMV on public highways by a driver without a Commercial Driver's License or valid medical certificate.

247. Defendant Caminantes engaged in extreme and outrageous conduct by knowingly permitting the operation of a CMV on public highways with defective and unsafe brakes.

248. Defendant Caminantes' conduct of knowingly permitting the operation of a CMV on public highways by a driver without a Commercial Driver's License or valid medical certificate was reckless.

249. Defendant Caminantes' conduct of knowingly permitting the operation of a CMV on public

highways with defective and unsafe brakes was reckless.

250. Defendant Caminantes' extreme and outrageous conduct recklessly resulted in the crash killing Emiliano Godines, Christina Godines, Aaron Godinez, Halie Everts and Aaron and Halie's minor daughter, T.G.  These individuals were the Plaintiffs' father, mother, brother, future sister-in-law and niece, respectively.  The reckless killing of their family caused the Plaintiffs, Christian and Abigail Godinez, severe emotional distress and harm.

## THIRTEENTH CLAIM FOR RELIEF

### *(Outrageous Conduct of Lucky 22 and Carlos Coreas)*

251. All relevant portions of this Complaint are incorporated herein as if fully set forth.

252. Defendants Lucky 22 and Carlos Coreas engaged in extreme and outrageous conduct by knowingly permitting the operation of a CMV on public highways by a driver without a Commercial Driver's License or valid medical certificate.

253. Defendants Lucky 22 and Carlos Coreas engaged in extreme and outrageous conduct by knowingly permitting the operation of a CMV on public highways with defective and unsafe brakes.

254. Defendants Lucky 22 and Carlos Coreas' conduct of knowingly permitting the operation of a CMV on public highways by a driver without a Commercial Driver's License or valid medical certificate was reckless.

255. Defendant Lucky 22 and Carlos Coreas' conduct of knowingly permitting the operation of a CMV on public highways with defective and unsafe brakes was reckless.

256. Defendants Lucky 22 and/or Coreas' conduct of entrusting a commercial motor vehicle into the hands of Defendant Puebla, who was not licensed, trained or qualified to operate a

CMV on the highways of Colorado was outrageous and a cause of the crash which killed Emiliano Godines, Christina Godines, Aaron Godinez, Halie Everts and Aaron and Halie's minor daughter, T.G.

257. Defendant Lucky 22 and Carlos Coreas' extreme and outrageous conduct recklessly resulted in the crash killing Emiliano Godines, Christina Godines, Aaron Godinez, Halie Everts and Aaron and Halie's minor daughter, T.G.  These individuals were the Plaintiffs' father, mother, brother, future sister-in-law and niece, respectively.  The reckless killing of their family caused the Plaintiffs, Christian and Abigail Godinez, severe emotional distress and harm.

## FOURTEENTH CLAIM FOR RELIEF

### (Civil Conspiracy, Aiding and Abetting, Fraud of Caminantes Trucking, Lucky 22, Paris West Trucking, and Carlos Coreas)

258. All relevant portions of this Complaint are incorporated herein as if fully set forth.

259. Upon information and belief, Defendant Caminantes and/or Lucky 22 accepted the tender of the load from the United States Postal Service to provide services under its authority as a "motor carrier" and not as a "broker."  49 USC § 13901(c) requires specification of authority for which transportation or services is provided.

260. Accordingly, Defendant Caminantes is estopped from claiming that it "brokered" or "assigned" the load to any independent contractor, including Lucky 22, Carlos Coreas or Jesus Puebla.

261. Defendant Caminantes is a "motor carrier providing … that uses motor vehicles not owned by it to transport property under an arrangement with another party."  49 USC § 14102(a).  Defendant Caminantes is liable for the acts of Lucky 22, Carlos Coreas and Jesus Puebla.

Defendant Jesus Puebla is a statutory employee of Caminantes.  Caminantes is a statutory employer that assumed possession, control and use of the equipment, including the commercial motor vehicle involved in the crash.  49 USC § 14102(a); CFR § 376.11-12(c); 376.26; 49 CFR § 390.5.

262.  Defendants Caminantes, Lucky 22, Carlos Coreas, and, upon information and belief, the Coreas' other business, Paris West Trucking, aided and abetted violations of the Federal Motor Carrier Safety Regulations and engaged in civil conspiracy to circumvent them.

263.  Defendants Caminantes, Lucky 22, Carlos Coreas, and Paris West Trucking all conspired to commit unlawful operation of a commercial motor vehicle by knowingly, recklessly and willfully employing and allowing a driver who was not licensed to carry out the transportation of goods in a commercial motor vehicle for business purposes on public roadways.

264.  Defendants Caminantes, Lucky 22, Carlos Coreas and Paris West, conspired to commit unlawful operation of a commercial motor vehicle by knowingly, recklessly and willfully allowing operation of a commercial motor vehicle with defective and unsafe brakes to carry out the transportation of goods for business purposes on public roadways.

265.  Defendants Caminantes, Lucky 22, Carlos Coreas and Paris West's conspiracy to commit unlawful operation of a commercial motor vehicle by knowingly, recklessly and willfully employing and allowing a driver who was not licensed to carry out the transportation of goods in a commercial motor vehicle for business purposes on public roadways resulted in the crash causing injuries to the Plaintiffs as set forth in this complaint.

266.  Defendants Caminantes, Lucky 22, Carlos Coreas and Paris West's conspiracy to commit

unlawful operation of a commercial motor vehicle by fraudulently, knowingly, recklessly and willfully allowing operation of a commercial motor vehicle with defective and unsafe brakes to carry out the transportation of goods for business purposes on public roadways resulted in the crash causing injuries to the Plaintiffs as set forth in this complaint.

267. As a legal and proximate result of the Defendants' acts or omissions, negligence, aiding and abetting, and civil conspiracy, Defendants are liable under master/servant/agency/ statutory employer/joint-borrowed employee doctrines.  Plaintiffs suffered injuries and damages that are set forth more fully below as a proximate and legal result thereof.

## **FIFTEENTH CLAIM FOR RELIEF**

### *(Negligent Entrustment of Defendant Carlos Coreas/Lucky 22)*

268. All relevant portions of this Complaint are incorporated herein as if fully set forth.

269. As the registered owner of the Kenworth T800 straight truck (the "truck"), Defendant Carlos Coreas and/or Lucky 22 had a duty to ensure any driver of the truck was properly qualified and licensed not only to safely operate the truck on public highways, but to inspect the truck for any safety issues.

270. As the registered owner of the Kenworth T800 straight truck, Defendant Carlos Coreas and/or Lucky 22 negligently entrusted the truck to Defendant Jesus Puebla by knowingly permitting the operation of the truck on public highways by a driver without a Commercial Driver's License or valid medical certificate, who had also, on information and belief, been cited for not having a Commercial Driver's License earlier in 2022.

271. Defendants Carlos Coreas and/or Lucky 22's conduct of knowingly permitting the operation of the truck on public highways by a driver without a Commercial Driver's

License or valid medical certificate was reckless.

272. Defendant Carlos Coreas' and/or Lucky 22's conduct of knowingly permitting the operation of the truck on public highways with defective and unsafe brakes was reckless.

273. Defendants Lucky 22 and/or Coreas' conduct of entrusting a commercial motor vehicle into the hands of Defendant Puebla, who was not licensed, trained or qualified to operate a CMV on the highways of Colorado was a cause of the crash which killed Emiliano Godines, Christina Godines, Aaron Godinez, Halie Everts and Aaron and Halie's minor daughter, T.G.

274. Defendants Lucky 22 and Carlos Coreas' conduct recklessly resulted in the crash killing Emiliano Godines, Christina Godines, Aaron Godinez, Halie Everts and Aaron and Halie's minor daughter, T.G.  These individuals were the Plaintiffs' father, mother, brother, future sister-in-law and niece, respectively.   The reckless killing of their family caused the Plaintiffs, Christian and Abigail Godinez, severe emotional distress and harm.

## SIXTEENTH  CLAIM FOR RELIEF

### *(Survival Action on behalf of Aaron Godinez)*

275. All relevant portions of this Complaint are incorporated herein as if fully set forth.

276. Pursuant to Wyoming's Wrongful Death Act, Plaintiff Christian Godines, as the putative Wrongful Death Representative, duly appointed in Wyoming, brings forth the claims for the wrongful death of Aaron Godinez.

277. In the alternative, should Colorado substantive wrongful death law apply, the Defendants are hereby put on notice that in accordance with C.R.S. § 13-20-101(1), in a tort action based upon personal injury, the damages recoverable after the death of the person in whose

favor such action has accrued shall be limited to loss of earnings and expenses sustained or incurred prior to death and shall not include damages for pain, suffering, or disfigurement, nor prospective profits or earnings after the date of death.

278. Plaintiff Abigail Godinez was appointed on December 8, 2022 as the personal representative for the Estate of Aaron Godinez.

279. Plaintiff Christian and Abigail Godinez's brother, Aaron Godinez, did not succumb to the injuries he sustained in the Subject Crash until 6:21 p.m., June 13, 2022 – nearly five hours after the crash occurred (at 1:27 p.m., June 13, 2022).

280. During that time, Aaron Godinez was rushed to the Medical Center of the Rockies, where clinical efforts were unsuccessful in saving his life.

281. Over the course of Aaron Godinez's final hours at the Medical Center of the Rockies, medical bills for his treatment totaled **$231,351.79.**

282. Plaintiff Abigail Godinez, as Personal Representative of the Estate of Aaron Godinez, duly appointed in Wyoming, prays for relief as contemplated by C.R.S. § 13-20-101(1) in an amount to satisfy the medical expenses totaling $231,351.79 incurred by Aaron Godinez in his final hours at the Medical Center of the Rockies.

## **DAMAGES**

283. Plaintiffs incorporate and adopt by reference all the facts and allegations above as though fully set forth herein.

284. As a direct and proximate result of the negligent, egregious, reckless, willful, wanton, outrageous and/or intentional conduct by the Defendants, the Plaintiffs have suffered severe harm, loss, grief, anguish, and damages, including economic damages and damages

for non-economic loss for grief, loss of companionship, pain and suffering, loss of consortium, and severe emotional distress.

285.   The acts and omissions and conduct of all Defendants was reckless, willful, wanton, outrageous and done in a complete disregard for the lives of the deceased Godines family members and the rights of the Plaintiffs and the traveling public, resulting in severe damages for grief, loss of companionship, pain and suffering, and emotional stress.

**WHEREFORE**, Plaintiffs respectfully pray for judgment in their favor and against Defendants, jointly and severally, in an amount which will compensate them for the injuries, damages and losses caused by Defendants, for pre-judgment and post-judgment interest as provided by law, for costs and expenses, for expert witness fees, for attorneys' fees, any applicable penalties, punitive damages, any other monetary, or other damages, relief or compensation authorized by law allowed by law or as the Court determines equitable and just and, if applicable, that such damages shall not be limited by the provisions of C.R.S. § 13-21-203 as the conduct alleged herein constitutes a felonious killing as set forth in C.R.S. § 15-11-803(1)(b).

## DEMAND FOR BENCH TRIAL FOR ALL CLAIMS AGAINST UNITED STATES OF AMERICA

## DEMAND FOR JURY TRIAL FOR ALL CLAIMS AGAINST ALL OTHER DEFENDANTS

Plaintiffs hereby demand that all claims not required to be tried before the Bench, be tried by jury.

Respectfully submitted this 17th day of October, 2023.

**Christian and Abigail Godinez,
Plaintiffs**


  s/ Grant H. Lawson
Grant H. Lawson, #54297
**METIER LAW FIRM, LLC**
4828 S. College Avenue
Fort Collins, CO 80525
(970) 377-3800
(970) 225-1476 (fax)
grant@metierlaw.com

*Attorney for Plaintiffs*

Plaintiffs' Address:

Christian Godinez
3506 Hoback
Gillette, WY  82718

Abigail Godinez
3415 Goldenrod Av.
Gillette, WY  82716