**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-02606-NYW-SBP

CHRISTIAN GODINEZ, individually and as the putative Wrongful Death Representative
for the Estates of Aaron Godinez, Emiliano Godines, and Christina Godines, and
ABIGAIL GODINEZ, individually and as the Personal Representative for the Estate of
Aaron Godinez,

      Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
UNITED STATES OF AMERICA,
JOSE MAURICIO COREAS D/B/A CAMINANTES TRUCKING,
PARIS WEST TRUCKING, INC.,
CAMINANTE LOGISTICS, INC.,
LUCKY 22, INC.,
CARLOS COREAS, and
JESUS PUEBLA,

      Defendants.

---

## ORDER GRANTING MOTION TO DISMISS

---

This matter comes before the Court on the Motion to Dismiss Third Amended
Complaint with Prejudice ("Motion to Dismiss" or "Motion") by Defendant State Farm
Mutual Automobile Insurance Company ("State Farm"). [Doc. 146, filed June 26, 2024].
Plaintiffs Christian Godinez and Abigail Godinez, proceeding as individuals and as
representatives of their family members' estates (collectively, "Plaintiffs"), have
responded in opposition. [Doc. 154]. State Farm has replied. [Doc. 158]. The Court
finds that oral argument would not materially assist in the disposition of the Motion to
Dismiss. Upon review of the Motion and the related briefing, the applicable case law, and

the entire docket, the Motion to Dismiss is respectfully **GRANTED**.

## BACKGROUND

The following facts are drawn from the operative Third Amended Complaint and Jury Demand ("Third Amended Complaint"), [Doc. 138], and the Court presumes they are true for purposes of the Motion.  On June 13, 2022, Aaron Godinez was driving his parents, his fiancé, and his infant daughter back to their homes in Wyoming after spending the weekend in Denver.  [*Id.* at ¶ 54].  While driving north on Interstate 25 in Colorado, the family's car was struck by a truck carrying U.S. mail.  [*Id.* at ¶ 83].  All five family members in the car were killed.  [*Id.* at ¶ 84].

The truck's driver, Defendant Jesus Puebla ("Mr. Puebla"), worked for Defendant Lucky 22, Inc. ("Lucky 22").  [*Id.* at ¶ 26].  A jury later found Mr. Puebla guilty of vehicular homicide for reckless driving and driving without a valid commercial driver's license, among other convictions.  *See* [Doc. 146-1].[1]  The truck was registered to Defendant Carlos Coreas, who owns Lucky 22.  [Doc. 138 at ¶¶ 28, 32].  At the time of the crash, Lucky 22 was a subcontractor for Defendant Jose Mauricio Coreas d/b/a Caminantes Trucking ("Caminantes").  [*Id.* at ¶¶ 21, 73].  Caminantes, in turn, had a contract for mail transportation with the United States Postal Service ("USPS").  *See* [*id.* at ¶ 69].  Both Caminantes and Lucky 22 are registered for-hire motor carriers.  [*Id.* at ¶¶ 23–24, 30–31].

### I.    Statutory and Regulatory Framework

The Federal Motor Carrier Safety Administration ("FMCSA") requires motor

---

[1] The Court takes judicial notice of the state court records without converting the Motion to Dismiss into one for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *see also Williams v. Stewart Title Co.*, 806 F. App'x 625, 627 n.1 (10th Cir. 2020) (taking judicial notice of state court records).

carriers to maintain liability coverage through an insurance policy, surety bond, or other approved security. 49 C.F.R. §§ 387.7(a), (b)(1) (2024); 49 U.S.C. § 13906(a)(1). The insurance must provide "financial responsibility" sufficient to meet the FMCSA's mandatory minimum levels of coverage. *See* 49 C.F.R. §§ 387.7(a), 387.9. The FMCSA also requires motor carriers to obtain "proof of minimum levels of financial responsibility" and file it with the FMCSA. 49 C.F.R. §§ 387.7(d), (e)(2); 49 U.S.C. §§ 13906(a)(2), (f). That proof commonly consists of a Form MCS-90, which endorses the underlying insurance policy and "guarantees payment of minimum amounts, as set forth in the regulations, to an injured member of the public." *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 870 (10th Cir. 2009) (citing 49 C.F.R. §§ 387.7, 387.9).

FMCSA regulations provide that required insurance policies "shall remain in effect continuously until terminated." 49 C.F.R. § 387.7(b)(1). Either an insurer or the insured motor carrier may cancel an insurance policy with 35 days' notice in writing. *Id.* A certificate of insurance "shall not be cancelled or withdrawn until 30 days after the FMCSA receives written notice from the insurance company . . . or other party, as the case may be." § 387.413(d); *see also* 49 U.S.C. 13906(e).

## II.    State Farm and the Insurance Policy on the Truck

The precise relationship between State Farm, Caminantes, Lucky 22, and the truck involved in the accident is unclear. Carlos Coreas owned Lucky 22 and the truck. [Doc. 138 at ¶¶ 28, 32]. Mr. Puebla, a Lucky 22 employee, operated the truck on the day of the crash and all other times relevant to this case. [*Id.* at ¶¶ 34, 52, 79]. But Plaintiffs allege that it was Caminantes, not Lucky 22, that obtained the insurance coverage on the truck

through a policy from State Farm.  [*Id.* at ¶ 60; Doc. 154-1].[2]  State Farm also issued Caminantes a Form MCS-90, which Plaintiffs contend covers the truck involved in the accident.  [Doc. 138 at ¶ 57; Doc. 154-2].

In February 2020, more than two years before the crash, State Farm declined to renew Caminantes's underlying insurance policy on the truck.  [Doc. 138 at ¶ 60].  In its letter informing Caminantes of the nonrenewal, State Farm cited the truck's history of safety violations.  [*Id.*; Doc. 154-1].  Plaintiffs agree that the truck was unsafe, alleging that the truck had "dangerous, defective and unmaintained brakes and safety equipment." [Doc. 138 at ¶¶ 83, 102–05].  Plaintiffs also allege that State Farm never informed the FMCSA that it had declined to renew the policy on the truck, in violation of FMCSA regulations.  [*Id.* at ¶¶ 61–64].

## III.     Plaintiffs' Claim Against State Farm

Plaintiffs bring a single claim against State Farm for negligence ("Claim I").  *See* [*id.* at ¶¶ 119–37].  In Claim I, Plaintiffs assert that the Form MCS-90 and federal regulations create a duty to notify the FMCSA when an insurer cancels a policy on a motor carrier's vehicle, and that the duty is owed to the public.  [*Id.* at ¶¶ 124–25].  Plaintiffs reason that when State Farm failed to notify the FMCSA that it had declined to renew the insurance on the truck, State Farm breached its duty and proximately caused the June 13, 2022 crash.  [*Id.* at ¶¶ 126–36].  In the instant Motion, State Farm argues that this theory fails to state a claim, and Claim I should be dismissed.  *See* [Doc. 146].  The Court

---

[2] The Court considers State Farm's Form MCS-90, [Doc. 154-2], and nonrenewal letter to Caminantes, [Doc. 154-1], because Plaintiffs reference the documents in their Third Amended Complaint, the documents are central to Plaintiffs' claim against State Farm, and neither Party disputes the documents' authenticity.  *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

considers State Farm's and Plaintiffs' respective arguments below.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible." (quotation omitted)). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

State Farm argues that Plaintiffs fail to state a claim for negligence because State Farm owed no duty to Plaintiffs and did not cause their injuries.  *See generally* [Doc. 146]. Under Colorado law,[3] "[t]o establish a prima facie case for negligence, a plaintiff must

---

[3] Plaintiffs assert that Wyoming law should govern this action but "assume without

show that the defendant owed a legal duty of care to the plaintiff, the defendant breached that duty, the plaintiff suffered injury, and the defendant's breach caused the plaintiff's injury." *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo. 2002). The causation element of negligence contains two components: "cause in fact" and "legal" or "proximate cause." *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 467 P.3d 287, 292 (Colo. 2020). It is well settled that in negligence cases, the burden of proof is on the plaintiff to establish causation. *See Graham v. Shilling*, 291 P.2d 396, 398 (Colo. 1955). Because the Court finds that Plaintiffs fail to adequately allege facts to sustain causation, it does not reach the Parties' arguments with respect to duty. *See A.B. ex rel. Ybarra v. City of Woodland Park*, No. 14-cv-00151-RM-KMT, 2016 WL 1237195, at *4 (D. Colo. Mar. 29, 2016) (declining to address duty when plaintiff's allegations could not support causation).

I.    **Cause in Fact**

Under the "but for" test for cause in fact, a plaintiff must allege that "but for the alleged negligence, the harm would not have occurred." *Deines v. Atlas Energy Servs. LLC*, 484 P.3d 798, 801 (Colo. App. 2021). "The requirement of 'but for' causation is satisfied if the negligent conduct in a natural and continued sequence, unbroken by any efficient, intervening cause, produces the result complained of, and without which the result would not have occurred." *N. Colo. Med. Ctr., Inc. v. Comm. on Anticompetitive*

_____

conceding" that Colorado law applies for purposes of their response to the Motion. [Doc. 154 at 9 n.2]; *see also* [Doc. 138 at ¶¶ 116–18]. Because the Court discerns no outcome determinative conflict between Colorado and Wyoming law that would affect the Court's ruling on the Motion, the Court adopts the Parties' assumption that Colorado law applies and does not undertake a choice of law analysis. *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 (D. Colo. 2017) ("When more than one body of law may apply to a claim, the Court need not choose which body of law to apply unless there is an outcome determinative conflict between the potentially applicable bodies of law." (quotation omitted)).

*Conduct*, 914 P.2d 902, 908 (Colo. 1996) (quotation and brackets omitted).  "Causation

in fact is typically a question for the jury."  *Rocky Mountain Planned Parenthood*, 467 P.3d

at 292.  But if Plaintiffs' factual allegations "would allow reasonable minds to draw just

one inference from them," a court may find as a matter of law that a plaintiff has failed to

adequately plead causation.  *See id.*; *see also Bristol Co., LP v Osman*, 190 P.3d 752,

758 (Colo. App. 2007) (concluding as a matter of law that complaint failed to adequately

allege cause in fact).

State Farm argues that its failure to notify the FMCSA could not have "caused or

contributed" to the crash due to the involvement of other Defendants.  [Doc. 146 at 13–

14].  Plaintiffs counter that "[t]he causal chain is straightforward."  [Doc. 154 at 8].  As

Plaintiffs see it,

> By not informing the regulatory arm of the Federal Government tasked with
> revoking the operating authority of uninsured carriers, State Farm
> prevented the FMCSA from doing its job.  State Farm's neglect resulted in
> Defendant Jesus Puebla driving an uninsured, recklessly maintained and
> unsafe truck on the day of the crash.  Defendant State Farm had the ultimate
> responsibility to the traveling public to notify the federal governing body of
> the termination of federally required insurance coverage.

[*Id.*].

The Court respectfully disagrees that Plaintiffs plausibly allege a causal chain that

is straightforward or existent.  The critical link in this chain is that, had State Farm notified

the FMCSA of the policy nonrenewal, "the FMCSA would have been required to

immediately terminate or otherwise revoke the operating authority of Defendant

Caminantes upon notice of no insurance coverage."  [Doc. 138 at ¶ 65].  But the Court

cannot accept this legal conclusion as true at the motion-to-dismiss stage.  *Khalik v.

United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012).  Plaintiffs never explain why the

lapse of insurance coverage on a single truck, *see* [Doc. 154-1], would require the FMCSA to immediately revoke the operating authority of Caminantes as a whole.  And because State Farm issued the policy nonrenewal more than two years before the crash, Caminantes would have had ample time to secure new insurance on the truck or otherwise comply with the FMCSA's insurance requirements.  *Cf. Bristol*, 190 P.3d at 758 (finding no causation in attorney malpractice suit when attorney gave allegedly deficient advice on a matter four years before client filed suit and lost).  Even viewing the allegations in the light most favorable to Plaintiffs, it appears entirely possible that Defendant Puebla still would have been on the road, driving recklessly, if State Farm had notified the FMCSA of the nonrenewal.  In other words, Plaintiffs' allegations fail to establish that, "but for" State Farm's conduct, the crash would not have occurred.  *Deines*, 484 P.3d at 801; *see also Hill v. W. Door*, No. 04-cv-00332-REB-CBS, 2005 WL 2991589, at *4 (D. Colo. Nov. 8, 2005) (finding no causal connection between motor carrier's regulatory violations and crash when there was "no evidence in the record to show that [the driver] would not have been driving the truck on the day of the accident if he and [his employer] had complied with" federal regulations).

The alleged wrongdoing by USPS only further attenuates State Farm's conduct from the crash.  Plaintiffs allege USPS failed to adequately investigate Caminantes and Lucky 22 prior to contracting with them, failed to ensure Defendant Puebla held a valid commercial driver's license, and violated its own policies in doing so.  [Doc. 138 at ¶¶ 144–45, 148, 151–52].  Moreover, USPS continued to permit Caminantes and Lucky 22 to transport mail even though the FMCSA's website showed that Caminantes's vehicles had accrued hundreds of safety violations and every vehicle in Lucky 22's fleet

was unsafe for operation. [*Id.* at ¶¶ 141, 145]. As alleged, USPS never should have hired Caminantes and Lucky 22 in the first place. [*Id.* at ¶¶ 145–50]. There are simply no factual allegations to support the conclusion that notice of State Farm's termination of insurance coverage two years prior to the crash would have resulted in the FMCSA's revocation of Caminantes's operating authority, which would have in turn resulted in the cancellation of the USPS contracts, which then would have halted Caminantes's hauling of U.S. Mail and prevented Mr. Puebla's delivery on June 13, 2022. *See* [Doc. 154 at 14]. Any causal connection between this string of hypothetical events is particularly weak in light of USPS's alleged disregard of known safety concerns posed by Caminantes and Lucky 22.

Finally, Plaintiffs do not plausibly allege that State Farm's compliance with FMCSA regulations would have prevented the conduct by Caminantes, Lucky 22, and Mr. Puebla that caused the accident. Plaintiffs allege that Caminantes and Lucky 22 "acted in an orchestrated manner to subvert the rules, regulations and laws of the FMCSA, USDOT and the State of Colorado." [Doc. 138 at ¶ 179]. That scheme included violating vehicle safety standards, failing to properly inspect or maintain the truck involved in the accident, and permitting Mr. Puebla to drive their vehicles without a commercial driver's license. [*Id.* at ¶¶ 190–91, 239–42, 262–65]. Perhaps most importantly, Plaintiffs allege Mr. Puebla was recklessly operating the truck "in a distracted and unsafe manner" despite the fact that the truck's brakes were "defective and unsafe" and he lacked a commercial driver's license. [*Id.* at ¶¶ 230–33]. Even if State Farm had complied with its regulatory obligations, Caminantes, Lucky 22, and Mr. Puebla may well have continued to shirk theirs.

9

In light of these allegations, Plaintiffs only speculate that an FMCSA notice that Caminantes had an uninsured truck, or some other hypothetical FMCSA action, could have changed the conduct of USPS, Caminantes, Lucky 22, or Mr. Puebla and therefore averted the accident.  *See Reigel v. SavaSeniorCare, L.L.C.*, 292 P.3d 977, 988 (Colo. App. 2011) ("[T]he plaintiff must establish causation beyond mere possibility or speculation." (quoting *Nelson v. Hammon*, 802 P.2d 452, 457 (Colo. 1990))).  The Court concludes that Plaintiffs fail to plausibly allege facts that allow a factfinder to conclude that State Farm's alleged regulatory noncompliance was a "but-for" cause of a "natural and continued sequence" that led to the injury.  *N. Colo. Med. Ctr.*, 914 P.2d at 908 (quotation omitted).  The failure to establish cause in fact dooms Plaintiffs' claim against State Farm.  Nevertheless, in the interest of completeness, the Court also considers State Farm's arguments with respect to proximate cause.

## II.    Proximate Cause

"[T]ort law does not impose liability on an actor for all harm factually caused by the actor's tortious conduct."  *Deines*, 484 P.3d at 802 (citation omitted).  The proximate cause rule is "intended to ensure that casual and unsubstantial causes do not become actionable."  *N. Colo. Med. Ctr.*, 914 P.2d at 908.  As with factual cause, whether proximate cause exists is ordinarily a question of fact for the jury.  *Rocky Mountain Planned Parenthood*, 467 P.3d at 293.  But "in some cases, the chain of causation may be so attenuated that no proximate cause exists as a matter of law."  *Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 412 P.3d 751, 763 (Colo. App. 2015) (ellipsis and quotation omitted).

"The proximate cause requirement is only satisfied where it is foreseeable that the defendant's negligence will result in injuries to others and where this negligence is a substantial factor in causing the injuries sustained." *Build It & They Will Drink, Inc. v. Strauch*, 253 P.3d 302, 306 (Colo. 2011) (quotation omitted); *see also N. Colo. Med Ctr.*, 914 P.2d at 908 ("[F]or a plaintiff to prevail on causation, it is necessary to show that the negligence was a 'substantial factor' in producing the harm."). "If an event other than the defendant's alleged conduct appears predominant, the defendant's conduct cannot be a substantial factor." *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1228 (D. Colo. 2015) (citing *N. Colo. Med. Ctr.*, 914 P.2d at 908). When events or acts other than the defendant's conduct combine to cause a harm, one of those other events "may have such a predominant effect in bringing . . . about [the harm] as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor." *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987) (quoting Restatement (Second) of Torts § 433 cmt. d (Am. L. Inst. 1965)). Similarly, even if "no one of the contributing factors may have such a predominant effect, their combined effect may . . . so dilute the effects of the actor's negligence as to prevent it from being a substantial factor." *Id.*

State Farm argues that "[i]t is impossible to see how the cancellation of an insurance policy two years prior to this incident, and an alleged failure to report the cancellation to the FMCSA . . . could be a proximate cause in the tragic incident two years thereafter." [Doc. 146 at 16]. State Farm argues that none of its conduct could have served as a substantial factor in Plaintiffs' injuries based on the conduct by other

Defendants that led to the crash. [*Id.* at 13]. In their Response, Plaintiffs address neither proximate cause nor the substantial factor test. *See generally* [Doc. 154].

The Court respectfully concludes that Plaintiffs have failed to carry their burden to plausibly allege that State Farm's failure to provide notice to the FMCSA was a substantial factor in the accident. Even taking Plaintiffs' factual averments as true and construing them in the light most favorable to Plaintiffs, State Farm's alleged negligence was far removed in both time and degree from the June 13, 2022 collision when compared to Mr. Puebla's reckless driving, Lucky 22's and Caminantes's failure to maintain their vehicles and otherwise comply with safety rules, and USPS's failure to adequately vet and supervise its contractors. Plaintiffs make no factual allegations that State Farm had any control over other Defendants' conduct. *See Phillips*, 84 F. Supp. 3d at 1228 (holding that ammunition sellers' failure to adequately vet buyer was too attenuated from buyer's deliberate criminal acts for sellers to be held liable); *Ybarra*, 2016 WL 1237195, at *5 (finding that store employees' misidentification of decedent as shoplifter was not a substantial factor in decedent's death when employees called police, decedent resisted arrest, and police shot decedent as he tried to flee), *Smith*, 749 P.2d at 464 (finding that failure to timely approve decedent's alcoholism rehabilitation plan was not a substantial factor in decedent's death in motorcycle crash when he operated the motorcycle while intoxicated and wearing a knee brace that affected his ability to drive). And given Plaintiffs' wholesale failure to address proximate cause or its applicable standard, this Court may not craft arguments on Plaintiffs' behalf—particularly given the fact that Plaintiffs are and have been represented by able counsel since the inception of this lawsuit. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not

this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants).

Because Plaintiffs have not adequately alleged either component of causation, they fail to state a claim for negligence against State Farm. State Farm's Motion is respectfully **GRANTED**.

### CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)    The Motion to Dismiss Third Amended Complaint with Prejudice [Doc. 146] is respectfully **GRANTED**; and

(2)    Plaintiffs' negligence claim against State Farm is **DISMISSED with prejudice**.[4]

DATED: March 11, 2025                    BY THE COURT:

Nina Y. Wang
United States District Judge

---

[4] "[A] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Knight v. Mooting Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (quotation omitted). Plaintiffs have filed four iterations of their complaint and amended three times. [Doc. 1; Doc. 11; Doc. 75; Doc. 138]. They have taken discovery, *cf.* [Doc. 25], and supplemented their Response with documents obtained in discovery, [Doc. 154-1; Doc. 154-2]. Yet as explained above, Plaintiffs' theory of causation for their claim against State Farm remains speculative and highly attenuated. And their Response fails to explain how further discovery or different pleading would change the Court's analysis of causation. *See generally* [Doc. 154]. Under these circumstances, the Court concludes that a dismissal with prejudice with respect to State Farm is appropriate.