IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02606-NYW-SBP

CHRISTIAN GODINEZ, *et al.*,

    Plaintiffs,

v.

JESUS PUEBLA, *et al.*,

    Defendant.

---

### ORDER ON MOTION FOR DISCOVERY

---

**Susan Prose, United States Magistrate Judge**

    This matter is before the court on a motion for discovery, ECF No. 221 ("Motion for Discovery" or "Motion"), filed by plaintiffs Christian Godinez, individually and on behalf of the estates of Aaron, Emiliano, and Christina Godinez, and Abigail Godinez, individually and on behalf of the estate of Aaron Godinez (collectively, "Plaintiffs"), after it was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 222. Defendant the United States opposes the Motion. ECF No. 209 ("Response"). For the reasons below, the Motion for Discovery is respectfully **DENIED**.

### BACKGROUND

    The court assumes the reader's familiarity with the background facts and procedural history and recounts only what is relevant to the Motion for Discovery. This case arises out of a tragic automobile accident resulting in the deaths of Aaron, Emiliano, and Christina Godinez.

Plaintiffs bring claims under the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, asserting that the United States is vicariously liable for negligence on the part of a United States Postal Service ("USPS") contractor and subcontractor, and is directly liable for its own employees' negligence for awarding a contract to these entities (referred to by the parties as contract 800BA, which the court will simply refer to as the "Contract") and in supervising and administering the Contract. When Plaintiffs first sued the United States in October 2023, they had not administratively exhausted their claims. Plaintiffs later filed administrative claims in September and October 2023, which were denied on April 2, 2024. ECF No. 164 at 10 n.9. After exhausting their claims, Plaintiffs then filed the consolidated case, *Godinez v. United States Postal Service*, Case No. 24-cv-01644-NYW-SBP ("Consolidated Case").

The parties previously agreed to engage in limited jurisdictional discovery related to the United States's anticipated jurisdictional defenses. *See* ECF No. 113. The United States had moved to dismiss the claims against it in Plaintiffs' Third Amended Complaint, ECF No. 138 ("TAC"), under Federal Rule of Civil Procedure 12(b)(1). ECF No. 164. That motion has been denied without prejudice pending resolution of this discovery dispute.[1] ECF No. 211. Plaintiffs have since filed a Fourth Amended Complaint ("FAC"). ECF No. 237.

In their Motion for Discovery and their supplemental briefing in support of the Motion,

---

[1] The court notes that, strictly speaking, the court denied the motion to dismiss without prejudice pending resolution of a *previous* motion for jurisdictional discovery, stating in doing so that if appropriate, the court "will reinstate the Motion to Dismiss without further briefing." *See* ECF Nos. 201, 211. The previous motion for jurisdictional discovery has since been withdrawn. ECF No. 220. However, the issues raised in that motion remain pending in the Motion at issue here, *see id.*, and accordingly, are resolved upon publication of this Order. The court additionally notes, without expressing any opinion thereon, that the motion to dismiss may or may not be rendered moot by the filing of Plaintiff's Fourth Amended Complaint. *See* ECF No. 237.

ECF No. 224 ("Supplement"), Plaintiffs relate that on December 24, 2024, they first heard rumors of a criminal investigation concerning two USPS employees from the same Denver-based USPS distribution center that awarded the Contract. Motion at 2. Plaintiffs were later able to confirm that two individuals were indicted on federal charges in the Northern District of Texas for allegedly offering bribes and paying kickbacks to the two Denver-based USPS employees in exchange for USPS service contracts. *Id.* at 3. The United States has since notified the court and Plaintiffs that Tai Rho, who was previously deposed by Plaintiffs as the United States's appointed representative to testify on behalf of the USPS and who served in various managerial and other roles within the Denver USPS Processing and Distribution Center, was one of the two USPS employees involved in this scheme. *Id*. at 3-4. Plaintiffs note that Mr. Rho has "admitted" that he was one of two administrative officials "responsible for the 800BA contract which is the subject of this litigation." *Id*. at 4. Mr. Rho has since pled guilty to wire fraud. *Id*.

Plaintiffs state that they "were not aware of the alleged fraud scheme at the time of Mr. Rho's deposition and believe further jurisdictional discovery on the subject is now vital." *Id*. In support of this assertion, they argue that Mr. Rho's conduct "also calls into question the negligence of the United States (USPS) in the operation, management and supervision of the Highway Contract Route program" as well as "the numerous written and unwritten policies, procedures, job responsibilities and functions, which likely fall outside of the FTCA's 'discretionary function' analysis and Defendant['s] contention that this Court lacks jurisdiction over the claims." *Id*. at 5.

Plaintiffs allege that the "newly discovered" evidence "conclusively demonstrates that Defendant United States engaged in conduct that violates statutory or regulatory mandates" and

3

that "[s]uch conduct may exclude Defendant from immunity under 28 U.S.C. § 2679(b) and implicate the Court's jurisdiction under the FTCA." *Id*. at 8. They state that they "must be permitted to discover whether the criminal and fraudulent kick-back scheme involved the Defendant motor carriers and their employees and additionally shed light on the negligence of the USPS . . . ." *Id*. at 8-9.

Thus, Plaintiffs now seek additional jurisdictional discovery into the following issues:

1. The nature and extent of the alleged criminal conduct, including those USPS individuals responsible for the administration, management, and oversight of the 800BA contract;

2. Whether the U.S.P.S.' criminal conduct, including that of Mr. Rho, Mr. Yi, or other unnamed individuals involved contract 800BA and/or Jose Coreas DBA Caminantes Trucking, Lucky 22, Inc. and their employees and owners;

3. How and why the United States, and those supervisors directly responsible for the 800BA contract and for supervision over Mr. Rho, allowed Mr. Rho and any others with responsibilities for management, administration and oversight of the 800BA contract to conduct a fraudulent kick-back scheme with payments for the receipt of highway contract routes;

4. How Mr. Rho could have possibly been performing his responsibilities and duties as an Administrative Official, following all USPS written policies, procedures and requirements pertaining to the management, supervision and administration of the 800BA, while also being allowed to conduct a fraudulent kick-back scheme with motor carriers/contractors for the USPS[;]

5. How and why the United States appointed Mr. Rho to serve as a representative with the capacity to bind the United States as the FRCP Rule 30(b)(6) representative to testify about the policies, procedures, rules, requirements, and factual involvement with the administration, supervision and oversight of the 800BA contract, while under indictment for committing fraud against the United States and its citizens[;]

4

6. Defendant United States' conduct surrounding USPS policies, procedures and job requirements during the supervision, management and administration of contract 800BA;

7. Any internal investigations, communications, or policies relevant to the alleged criminal conduct and any ties to the Defendants Caminantes Trucking, Lucky 22, Inc., and their owners, agents and employees in this lawsuit;

8. Mr. Rho's entire employment history with the USPS, including all records and employee files, investigations, performance evaluations, complaints, reprimands, warnings, background and screening, appointments, promotions, benefits, clearance and all records kept by the Office and Personnel and Management for the United States;

9. Due diligence of the USPS in investigating whether any USPS employees were ever involved in any bribery, conspiracy, kick-back scheme, or other nefarious conduct involving any contracts between the USPS and Jose Coreas DBA Caminantes Trucking and/or Lucky 22, Inc; and

10. Other facts necessary to resolve the jurisdictional question.

*Id.* at 9-10.

Plaintiffs conclude that they "seek not to assert new, additional claims against the United States" via the Motion, but rather "seek to fully understand whether the United States' representative's criminal conduct in any way contributed to the renewal of contract 800BA," which they say is key to "the dispute between the government and Plaintiffs." Supplement at 4.

## LEGAL STANDARDS

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (quotation omitted). In deciding whether to permit

jurisdictional discovery, the court "is vested with broad discretion and should not be reversed unless discretion is abused." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 102 (10th Cir. 2012) (quotation omitted). A district court abuses its discretion if its refusal to grant discovery "results in prejudice to a litigant." *Sizova*, 282 F.3d at 1326 (citations omitted). A party is prejudiced where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (cleaned up) (quotation omitted). But it is not an abuse of discretion to deny discovery where there is a "very low probability that the lack of discovery affected the outcome of this case[.]" *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004). The party seeking discovery bears the burden of demonstrating the need for discovery and any prejudice resulting from the denial of discovery. *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 (10th Cir. 2010) ("BMG has failed to convince us of its legal entitlement to jurisdictional discovery and, more specifically, that it was prejudiced by the district court's denial of its motion for discovery.").

## ANALYSIS

The United States is cloaked with sovereign immunity, making it immune not just from liability, but from suit as a whole. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also Miller v. United States*, 463 F.3d 1122, 1123 (10th Cir. 2006) ("It is well-settled that no action lies against the United States unless Congress has authorized it.") (citation omitted).

Here, Plaintiffs bring claims under the FTCA, which Congress enacted as a waiver, albeit

a limited one, of the United States' sovereign immunity, and which "mak[es] the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). However, the FTCA waives immunity only in certain circumstances, and courts must carefully police the bounds of that waiver. The Tenth Circuit has said that the Act's waiver "must be construed narrowly and the 'limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.'" *Miller*, 463 F.3d at 1123 (quoting *In re Franklin Savings Corp.*, 385 F.3d 1279, 1289-90 (10th Cir. 2004)). One such limitation is the Act's exhaustion requirement, which states that "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). This mandatory exhaustion requirement cannot be waived. *Rowland v. Matevousian*, 121 F.4th 1237, 1246 (10th Cir. 2024) (holding that the administrative exhaustion requirement under the FTCA is jurisdictional and cannot be waived) (citing *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016); *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("As a *jurisdictional* prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.") (emphasis added)); *accord, e.g.*, *Fortner v. United States*, No. 24-cv-01037-MDB, 2025 WL 974026, at *3 (D. Colo. Mar. 31, 2025) ("Because administrative exhaustion is a jurisdictional requirement for claims under the FTCA, and because the FTCA is Plaintiff's exclusive remedy against the United States, the Court finds Plaintiff has

7

not met his burden of demonstrating the Court has jurisdiction.").[2]

The exhaustion requirement is satisfied when a claimant submits "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Lopez*, 823 F.3d at 976 (quoting *Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005)); *see id.* (observing that this "pragmatic interpretation is consistent with Form SF95, the form typically used for filing administrative claims"). Regarding the first element, all that is required is "notice of the facts and circumstances underlying a claim rather than the exact grounds upon which plaintiff seeks to hold the government liable." *Trentadue*, 397 F.3d at 853. Thus, the legal test for exhaustion looks to whether notice regarding facts, not legal theories, was provided to the government.

Evaluating Plaintiffs' arguments for discovery in light of this framework, Plaintiffs have not sufficiently explained why they believe they need further discovery to better respond to the United States's jurisdictional defenses here, nor have they explained how or why they believe that the specific discovery they request would help them to advance any argument supporting this court's jurisdiction. The court agrees with the United States that Plaintiffs' Motion "does not describe the United States' motion to dismiss or the law governing the jurisdictional defenses in

---

[2] Very recently, the Tenth Circuit observed "that the Supreme Court's recent decision in *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023), *may* call into question our precedent classifying the FTCA's exhaustion requirements as jurisdictional." *Rapid Enters., LLC v. United States Postal Serv.*, No. 24-4041, 2025 WL 1644543, at *4 (10th Cir. June 10, 2025) (concluding that the question was not "outcome determinative in this case") (emphasis added). This court has located no other case, from any jurisdiction, similarly suggesting that the FTCA exhaustion requirement is not jurisdictional. Regardless, that question need not be addressed here, where it is clear that the anticipated claim would be subject to the FTCA's exhaustion requirement and that the exhaustion mandate—whether or not characterized as "jurisdictional"—has not been satisfied.

any detail, nor tie their request for additional discovery to the arguments they made in their response to the motion to dismiss," and that Plaintiffs also do not "allege that their injuries were caused by bribes or kickbacks that USPS employees purportedly took, or by other USPS employees' failure to discover such bribes or kickbacks." Response at 8-9. Since the burden here is on Plaintiffs to demonstrate a "need" for further discovery and establish why they would be prejudiced by its denial, *see, e.g.*, *Breakthrough Mgmt.*, 629 F.3d at 1189 n.11, and Plaintiffs have not done so, this alone is fatal to the Motion for Discovery.

Expanding upon this point, again, Plaintiffs summarize the intentions underlying their Motion by stating that they seek to "fully understand whether the United States' representative's criminal conduct in any way contributed to the renewal of contract 800BA." Supplement at 4. However, the United States notes—without being controverted by Plaintiffs—that Plaintiffs have already conceded that Mr. Rho, the "representative" Plaintiffs refer to, "recommended *against* renewing contract 800 BA." Response at 5 (emphasis in original); *see* Motion at 6 (referencing "written communications and documentation that Defendant Caminantes Trucking should not have its contract 800BA renewed . . ."). Accordingly, given that Plaintiffs themselves acknowledge that Mr. Rho recommended not renewing the Contract, Plaintiffs have failed to explain why they believe further discovery might show that Mr. Rho's "criminal" conduct contributed to the renewal of the Contract. Moreover, even if further discovery were somehow to show that Mr. Rho's conduct was tied to the renewal of the Contract, Plaintiffs have not articulated how this would help them advance either their negligence or vicarious liability claims.

Furthermore, as noted above, Plaintiffs also state that Mr. Rho's conduct "calls into

9

question the negligence of the United States (USPS) in the operation, management and supervision of the Highway Contract Route program," as well as "the numerous written and unwritten policies, procedures, job responsibilities and functions," and that the "newly discovered" evidence "conclusively demonstrates that Defendant United States engaged in conduct that violates statutory or regulatory mandates" such that its "conduct may exclude Defendant from immunity under 28 U.S.C. § 2679(b) and implicate the Court's jurisdiction under the FTCA." *Id*. at 5, 8. But these allegations are entirely conclusory and fail to address *how* Mr. Rho's conduct "calls into question the negligence of the United States" or "demonstrates" that the United States "engaged in conduct that violates statutory or regulatory mandates"; instead, Plaintiffs merely state without elaboration that they do so. The court does not agree that Mr. Rho's conduct necessarily suggests that the United States acted negligently or engaged in conduct that violated any mandates. Moreover, unless Plaintiffs are attempting to assert an entirely new legal theory here not raised in the FAC (a possibility the court addresses below), it is unclear how Mr. Rho's conduct might implicate the issues at hand. Even assuming that Mr. Rho's conduct somehow reflects that the United States acted negligently or engaged in conduct that violated statutory or regulatory mandates, this does not mean that the United States acted in a way that affected the issues raised here. Plaintiffs have wholly failed to explain how Mr. Rho's conduct might relate to the facts alleged in the FAC (other than to generally note that Mr. Rho has a role in the Highway Contract Route program). They have therefore given the court no reason to connect Mr. Rho's conduct to the matter before the court.

    Turning briefly to the issue of whether Plaintiffs may instead seek discovery on the grounds that they have discovered facts that could lead to a new cause of action against the

United States, Plaintiffs have made it clear that they "are *not* asserting new claims against the United States" via the Motion. Supplement at 3 (emphasis in original). Regardless, Plaintiffs have not yet exhausted any claim arising from the criminal conduct that they now use to justify their request for additional jurisdictional discovery. By Plaintiffs' own admission, they did not learn of this conduct until December 2024, more than a year after they filed their administrative claims. *See* Motion at 2. It goes without saying that it is impossible for Plaintiffs to have mentioned facts and circumstances in their administrative claims concerning criminal conduct that post-dated those claims and that only recently came to their attention. *See, e.g.*, *Lopez*, 823 F.3d at 975-77 (concluding that where a plaintiff attempted to add a claim based on negligent credentialing and privileging at a Veterans Administration hospital based on newly-discovered facts, the court lacked jurisdiction because the claim had not been administratively exhausted).

Accordingly, the court concludes that Plaintiffs have not met their burden to show that they have a need for the jurisdictional discovery they seek. Nor have they shown that they will be prejudiced if this discovery is denied. The Motion for discovery therefore must be denied.

## CONCLUSION

For these reasons, the Motion for Discovery, ECF No. 221, is respectfully **DENIED**.[3]

---

[3] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting

11

DATED: September 2, 2025                BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

and the consequences of failing to object").