**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 22-cv-02606-NYW-SBP

CHRISTIAN GODINEZ, individually and as the putative Wrongful Death Representative for the Estates of Aaron Godinez, Emiliano Godines, and Christina Godines, and ABIGAIL GODINEZ, individually and as the Personal Representative for the Estate of Aaron Godinez,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on the United States' Motion to Dismiss (or "Motion"). [Doc. 249]. Plaintiffs Christian and Abigail Godinez, proceeding as individuals and as representatives of their family members' estates (collectively, "Plaintiffs"), have responded in opposition. [Doc. 252]. Defendant United States (or "the Government") has replied. [Doc. 256]. The Court finds that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion to Dismiss is respectfully **GRANTED**.

## BACKGROUND

The Court draws the following facts from the Fourth Amended Complaint and Demand for Bench Trial ("Fourth Amended Complaint"), [Doc. 237], and the exhibits submitted by the Parties. Because the Court construes the Motion as a factual attack on subject matter jurisdiction, the Court does not assume Plaintiffs' allegations are true. *See*

*United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001). As the Government's Motion indicates, however, many of the basic facts of this case are undisputed. *See* [Doc. 249 at 3–8].[1]

## I. The Accident

On June 13, 2022, Aaron Godinez was driving his parents, his fiancé, and his infant daughter back to their homes in Wyoming after spending the weekend in Denver. [Doc. 237 at ¶¶ 46, 64–65, 98]. While driving north on Interstate 25 in Colorado, the family's car was struck by a truck carrying U.S. mail (the "Truck"). [*Id.* at ¶¶ 46, 98]. All five family members in the car were killed. [*Id.* at ¶ 65].

The Truck's driver, Jesus Puebla ("Mr. Puebla"), worked for Lucky 22, Inc. ("Lucky 22"). [*Id.* at ¶ 34]. The Truck was registered to Carlos Coreas ("Mr. Coreas"), who owns Lucky 22. [*Id.* at ¶¶ 28, 43]. At the time of the crash, Lucky 22 was a subcontractor for Caminante Trucking ("Caminante").[2] [*Id.* at ¶ 54]. Caminante, in turn, had a contract for mail transportation with the United States Postal Service ("USPS"). [*Id.* at ¶¶ 48–53; Doc. 249-1 at ¶ 16].

## II. Caminante's Contract with USPS

USPS and Caminante first entered a contract, known as contract 800 BA, in 2013 and renewed it in 2016 and 2021. [Doc. 249-1 at ¶ 4]. Contract 800 BA, as renewed in 2021 (the "Contract"), provided for mail transportation between USPS facilities in Denver

[1] When citing page numbers in filings, the Court refers to the page numbers assigned by the CM/ECF system. When citing deposition transcripts, the Court refers to the page and line numbers in the transcript.

[2] Plaintiffs refer to this entity as "Caminantes." [Doc. 237 at ¶ 21; Doc. 252 at 1]. The Motion and exhibits refer to it as "Caminante." [Doc. 249 at 2; Doc. 249-1 at ¶ 4; *id.* at 95, 105, 107, 112]. For consistency, the Court uses "Caminante."

and the "Denver service area." [*Id.* at ¶ 19].

The Contract imposes several safety and insurance requirements on Caminante. In its vehicle requirements section, the Contract states that "[a]ll equipment shall be presented for inspection at the location and time indicated by the contracting officer or authorized representative." [*Id.* at 37 § B.2(d)]. The Contract provides that "[d]rivers shall satisfy themselves that [their] equipment is ready for use" and lists several components that must be inspected. [*Id.* at 55 § B.6(a)]. The Contract's insurance provisions require Caminante to continuously maintain insurance for all vehicles used under the contract. [*Id.* at 55–56 § B.7]. Caminante was required to provide proof of insurance before beginning performance. [*Id.*].

The record suggests that Caminante failed to fully comply with these requirements. Regarding vehicle inspections, USPS officials testified that they were not aware of any inspections or inspection records for the Truck. [Doc. 173-7 at 112:2–7; Doc. 173-13 at 52:23–53:17]. As for insurance, Caminante submitted an insurance certificate during the 2021 contract renewal process, but the insurance certificate stated that the policy would expire in July 2021. [Doc. 249-1 at ¶ 17; *id.* at 100]. Caminante did not obtain insurance after July 2021, and Keith Harris, USPS's Director of Surface Transportation, testified at his deposition that USPS would not have allowed Mr. Puebla to operate the Truck had USPS known the Truck was uninsured, [Doc. 249-1 at ¶ 1; Doc. 173-7 at 100:17–23].

The Contract also imposes prerequisites for new employees or subcontractors brought on by Caminante. *See* [Doc. 249-1 at 53–54 § B.5]. Caminante employees could not perform contract services until Caminante submitted a five-year driving record and other forms to USPS, and USPS performed a background check on the employee. [*Id.*].

As for subcontracting, the Contract's incorporated Terms and Conditions, *see* [*id.* at 28 § B.1.3.b], provide that Caminante "must obtain approval from the contracting officer before subcontracting any work awarded under this contract," [*id.* at 82 (Clause B-89)]. It is undisputed that Caminante never requested USPS's approval to subcontract with Lucky 22. [*Id.* at ¶ 24]. Because Caminante never sought approval to subcontract, USPS officials maintain that USPS did not discover Caminante's subcontract with Lucky 22 until after the crash. [Doc. 249-2 at ¶ 7]. Maria Hernandez, a USPS network specialist in Denver, avers that she believed Mr. Puebla and Mr. Coreas worked for Caminante. [Doc. 249-2 at ¶¶ 1, 7, 11]. Mr. Puebla's screening paperwork, which was submitted by Caminante, identifies his employer as "Caminante Trucking" and his supervisor as Carlos Coreas, without mentioning Lucky 22. [*Id.* at ¶ 9; *id.* at 8–11 (Mr. Puebla's screening paperwork)]. When USPS approved Mr. Puebla for contract work in December 2021, it listed the relevant contractor as "Caminante Trucking." [*Id.* at 16]. Nevertheless, Plaintiffs assert that USPS must have (or should have) been aware of Lucky 22 and the subcontract, because Carlos Coreas regularly met and communicated with USPS regarding Caminante's Contract. [Doc. 252 at 8–9]; *see also* [Doc. 249-2 at ¶ 8].

## III. Procedural History

This case began in October 2022, [Doc. 1], and was later consolidated with a related case, [Doc. 160; Doc. 161]. At one point, Plaintiffs brought claims against Caminante, Lucky 22, Mr. Puebla, Mr. Coreas, several other related entities, the Truck's insurer, and the United States. *See* [Doc. 138]. The Court dismissed the claim against the insurer, [Doc. 212], and Plaintiffs have voluntarily dismissed their claims against all defendants other than the United States, *see* [Doc. 213; Doc. 238; Doc. 239].

Plaintiffs' Fourth Amended Complaint brings three claims. *See* [Doc. 237]. First, Plaintiffs assert a claim for direct negligence ("Claim One"). [*Id.* at ¶¶ 100–17]. They allege that USPS failed to adequately investigate Caminante, Lucky 22, and Mr. Coreas before using them to transport mail and failed to ensure that Caminante and Lucky 22 appropriately authorized Mr. Puebla to operate a commercial motor vehicle. *See* [*id.* at ¶¶ 102–14]. Second, Plaintiffs bring a claim for vicarious liability, seeking to hold the United States liable for the acts of its agents and employees, including Caminante, Lucky 22, and Mr. Puebla ("Claim Two"). [*Id.* at ¶¶ 118–26]. Third, incorporating the above theories of relief, Plaintiffs request damages for injuries suffered by Aaron Godinez, pursuant to Colorado's survival statute and Wyoming's Wrongful Death Act ("Claim Three"). *See* [*id.* at ¶¶ 127–34]; *see also* Colo. Rev. Stat. § 13-20-101(1); Wyo. Stat. Ann. §§ 1-38-101 to -105.

The Government has previously moved to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(1). [Doc. 164]. The Court denied that motion without prejudice after Plaintiffs sought jurisdictional discovery. [Doc. 201; Doc. 211]. On September 2, 2025, Judge Prose denied Plaintiffs' requests for discovery. [Doc. 242]. Shortly thereafter, the Government filed the instant Motion and renewed its jurisdictional arguments. [Doc. 249]. The Government argues that Plaintiffs' direct negligence claims are barred by the Federal Tort Claims Act's ("FTCA") discretionary function exception and that the vicarious liability claims are barred by the FTCA's independent contractor exception. *See* [*id.* at 11–21]. In addition, the Government argues that Plaintiff Christian Godinez's claim under Wyoming law must be dismissed because Colorado law controls. [*Id.* at 21–25].

## LEGAL STANDARD

### I. Rule 12(b)(1)

Rule 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and the burden of establishing federal jurisdiction falls on the party invoking it, *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

A Rule 12(b)(1) motion may be classified as a facial attack or a factual attack on subject matter jurisdiction. Each type of attack implicates a different analytical framework. The Tenth Circuit has explained that:

> First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. In addressing a facial attack, the district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*Rodriguez-Aguirre*, 264 F.3d at 1203 (quotation omitted). However, when "the jurisdictional question is intertwined with the merits of the case, the [motion to dismiss] should be construed as a motion for summary judgment, not a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008).

"When deciding whether jurisdiction is intertwined with the merits of a particular dispute, the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Davis ex rel. Davis v. United States*,

343 F.3d 1282, 1296 (10th Cir. 2003) (quotation omitted). "[I]f subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case," courts consider the jurisdictional question and merits of the case to be intertwined. *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000) (quotation omitted). But if the "pertinent jurisdictional facts are undisputed," conversion to a summary judgment standard is unnecessary. *Myles v. United States*, 52 F. App'x 108, 109 (10th Cir. 2002); *Lopez v. United States*, 376 F.3d 1055, 1061 (10th Cir. 2004) (declining conversion where facts in dispute were "immaterial to the applicability of the discretionary function exception").

## II. Sovereign Immunity and the FTCA

The United States is generally immune from suit pursuant to the doctrine of sovereign immunity, which precludes federal jurisdiction. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). But "[t]hrough 28 U.S.C. § 1346(b)(1), the FTCA waives sovereign immunity for certain state law tort claims against the United States." *Garling v. EPA*, 849 F.3d 1289, 1294 (10th Cir. 2017). More specifically, the FTCA waives sovereign immunity "with respect to certain injuries caused by government employees acting within the scope of their employment." *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997); *see* 28 U.S.C. § 1346(b). But this waiver is subject to exceptions. *See* 28 U.S.C. § 2680. "When an exception applies, sovereign immunity remains, and federal courts lack jurisdiction." *Garling*, 849 F.3d at 1294.

The Tenth Circuit has identified several "guiding principles" in determining whether an FTCA exception applies to a plaintiff's claims. *Ohlsen v. United States*, 998 F.3d 1143, 1154 (10th Cir. 2021). First, a "waiver of sovereign immunity must be strictly construed,

in terms of its scope, in favor of the sovereign." *Id.* (quoting *Sossamon v. Texas*, 563 U.S. 277, 292 (2011)). Second, exceptions to the FTCA must be narrowly construed. *Id.* (citation omitted). Finally, "the party suing the government bears the burden to prove a waiver of sovereign immunity." *Id.* (citation omitted); *Miller v. United States*, 710 F.2d 656, 662 (10th Cir. 1983).

**ANALYSIS**

At the outset, the Court notes that it has resolved many of the issues raised by the Motion in another case arising from the same accident, *Bustillos v. United States*, No. 24-cv-03029-NYW-SBP, 2025 WL 2924648 (D. Colo. Sept. 4, 2025). As in *Bustillos*, the Court begins by addressing whether the Motion must be converted to one for summary judgment, then turns to the FTCA exceptions asserted by the Government. And because the Court concludes that the FTCA's exceptions bar Plaintiffs' claims no matter what state's law governs, the Court need not resolve the Parties' choice-of-law arguments.

**I. Conversion to a Summary Judgment Standard Is Unnecessary**

The Government argues that the Motion need not be converted to one for summary judgment because the "pertinent jurisdictional facts are undisputed." [Doc. 249 at 3 n.3 (quoting *Myles*, 52 F. App'x at 109)]. Plaintiffs counter that "there is ample dispute among material facts concerning not only the United States' jurisdictional arguments but the underlying merits of this case." [Doc. 252 at 11]. In their view, the relevant factual disputes are (1) "whether the USPS adequately screened Puebla and Coreas in conformance with their regulations," (2) "whether the USPS was required to inspect the Lucky 22 truck," and (3) "whether the USPS could ignore the requirements 39 U.S.C. § 5001 et. seq. and Contract 800BA alike." [*Id.* at 10 n.55].

Plaintiffs misapprehend the inquiry. Under *Lopez*, the question is not whether a plaintiff can identify *any* factual dispute pertaining to its claims, but whether the factual dispute is material to determining the applicability of the FTCA exception. 376 F.3d at 1061. Plaintiffs fail to explain how the purported factual disputes identified—i.e., whether the USPS adequately screened Messrs. Puebla and Coreas in conformance with their regulations; whether the USPS was required to inspect the Lucky 22 truck; and whether the USPS could ignore the requirements 39 U.S.C. § 5001 et. seq. and Contract 800BA alike—impact the Court's determination of whether Mr. Puebla was an independent contractor or an employee of USPS at the time of the collision. Instead, as discussed in detail below, the facts pertinent to that analysis are not disputed.

Nor do Plaintiffs explain how those factual inquiries pertain to whether or not the discretionary function exception applies in this case. This Court need not construct arguments on behalf of Plaintiffs who are represented by able counsel. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."). Accordingly, the Court respectfully concludes that the factual disputes identified by Plaintiffs are immaterial to the asserted FTCA exceptions and resolves the Motion as a factual attack on jurisdiction. *See Bustillos*, 2025 WL 2924648, at *4 (reaching the same conclusion).

## II. The FTCA Bars Plaintiffs' Claims

The Government argues that the FTCA's independent contractor exception bars Plaintiffs' vicarious liability claims and the discretionary function exception bars Plaintiffs' direct negligence claims. *See* [Doc. 249 at 11–21]. The Court addresses each exception in turn.

### A. Independent Contractor Exception

The FTCA waives immunity only for torts by "any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The independent contractor exception thus turns on whether the individual in question was a government employee or merely an independent contractor. *Ohlsen*, 998 F.3d at 1154. The key inquiry is "whether the Government supervises the day-to-day operations of the individual." *Id.* at 1157 (quoting *Lilly v. Fieldstone*, 876 F.2d 857, 858 (10th Cir. 1989)). In *Lilly*, the Tenth Circuit outlined seven factors for courts to consider when assessing whether an individual was a government employee:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses her own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

*Lilly*, 876 F.2d at 859.

The Government argues that all seven *Lilly* factors support a finding that USPS had an independent contractor relationship with Caminante and its employees. [Doc. 249 at 11–13]. The Government cites several cases concluding that USPS's contracts do not give it day-to-day control over its contractors. [*Id.* at 12]; *see also, e.g.*, *Norton v. Murphy*, 661 F.2d 882, 884 (10th Cir. 1981) (holding that, although USPS contract contained "considerable detail as to the work to be performed," it did not "provide for detailed supervision or control of the carrier as he proceeds along his route"). And because numerous district courts have found that the independent contractor exception extends to conduct by subcontractors, the Government asserts that the fact that Mr. Puebla

worked for Lucky 22 should not change the application of the *Lilly* test to Mr. Puebla's relationship with USPS. [Doc. 249 at 13 (collecting cases)].

Plaintiffs offer no competing analysis under the *Lilly* factors. Instead, they argue that the Government is precluded from asserting the independent contractor exception because there was no "independent contractor relationship . . . between the USPS and Lucky 22." [Doc. 252 at 22–23 (emphasis omitted)]. This confuses the name of the exception with its substance. Despite Plaintiffs' claims to the contrary, the "plain language" of the FTCA does not require—or even mention—a "contractual relationship." [*Id.* at 23]. Rather, the FTCA's waiver of immunity extends only to "employee[s] of the Government." § 1346(b)(1). So the inquiry is whether the alleged tortfeasors "were federal employees for purposes of the FTCA." *Ohlsen*, 998 F.3d at 1156; *accord Logue v. United States*, 412 U.S. 521, 526 (1973) (framing the inquiry as whether the tortfeasor was "shown to be an 'employee of the Government' as that term is used in the [FTCA]").

The Tenth Circuit has made clear that the *Lilly* factors supply the test for determining an individual's "employment status" in this context. *See Ohlsen*, 998 F.3d at 1156–57. Nothing in *Lilly* or its progeny suggests that this test applies only to individuals who have directly and independently contracted with the government. *See Tsosie v. United States*, 452 F.3d 1161, 1164 (10th Cir. 2006) (applying *Lilly* factors to surgeon who worked at government hospital pursuant to contract between federal agency and corporate entity, without discussing whether surgeon himself had any direct contractual relationship with federal agency); *Duplan v. Harper*, 188 F.3d 1195, 1200–01 (10th Cir. 1999) (applying *Lilly* to "the contracts between the government and Med–National . . . on one hand and Med–National and Dr. Harper . . . on the other hand" to assess the

employment status of *both* Med–National and Dr. Harper under the FTCA); *cf. Ohlsen*, 998 F.3d at 1149, 1156–60 (using *Lilly* to analyze employment status of "cooperators" working for the Forest Service under a statutorily authorized "Participating Agreement"). Plaintiffs cite no support for their newfound distinction between contractors and subcontractors, either in cases applying *Lilly* or in the traditional agency principles that give rise to the employee-contractor distinction in the first place. *See Logue*, 412 U.S. at 527–28; [Doc. 252 at 22–24]. Unsurprisingly, then, courts apply the baseline inquiry set out in *Lilly* and *Logue*—the extent of the Government's control over the alleged tortfeasor's performance—to employees of contractors and subcontractors alike. *See, e.g.*, *Duplan*, 188 F.3d at 1200–01; *Engelstein v. USDA*, No. 20-cv-00916-TSZ, 2023 WL 5901203, at *2, *5–6 (W.D. Wash. Sept. 11, 2023) (finding independent contractor exception applied to both contractor and subcontractor because Government did not supervise or control contractor's operations).

Turning to the *Lilly* factors themselves, the Court finds that all seven factors indicate that Mr. Puebla and other Caminante or Lucky 22 employees were not government employees. With respect to the first factor—intent—there is no sign that USPS, Caminante, or Mr. Puebla intended for Mr. Puebla to be a government employee. The Contract does not expressly address this issue, but some provisions draw distinctions between USPS employees and contractors. *See, e.g.*, [Doc. 249-1 at 51 (§ B.3(d)),77 (Clause B-39)]. And the Parties' conduct under the Contract only confirms a mutual understanding that Mr. Puebla was not a USPS employee. *See* [Doc. 249-2 at 9–11 (the "Contract Personnel Questionnaire" that Mr. Puebla completed and submitted to USPS,

listing Caminante as his current "Employer")]; *Ohlsen*, 998 F.3d at 1157 (observing that both the agreement itself and the parties' performance may manifest intent).

As for the second factor—control—the Contract includes "considerable detail" about Caminante's work, *Norton*, 661 F.2d at 884, but it does not give USPS control over the "manner and method of reaching the result," *Lilly*, 876 F.2d at 859. And as the Court observed in *Bustillos*, "Caminante provided its own equipment, paid its employees and their taxes, and obtained its own insurance"—as relevant to the third, fourth, and fifth factors—and there is no sign the arrangement was any different for Lucky 22 and Mr. Puebla. *See Bustillos*, 2025 WL 2924648, at *6; [Doc. 249-1 at ¶¶ 20, 22, 25; *id.* at 36–51 (equipment), 55–56 (insurance)]. Finally, the Contract restricted USPS employees from acting as contractors (sixth factor), [Doc. 249-1 at 66 (Clauses 1-4 and 1-5), 68 (Supplier Eligibility provision)], and permitted Caminante to enter subcontracts after obtaining approval (seventh factor), [*id.* at 82 (Clause B-89)].

The *Lilly* factors thus unanimously support a conclusion that the Government did not "supervise[] the day-to-day operations" of Caminante, Lucky 22, and Mr. Puebla. *Ohlsen*, 998 F.3d at 1157 (quoting *Lilly*, 876 F.2d at 858). This is consistent with the weight of persuasive authority. *See, e.g.*, *Chapman v. United States*, 480 F. Supp. 3d 601, 610 (M.D. Pa. 2020) (finding USPS did not control contractor's "day-to-day operations" where contractor was responsible for, inter alia, supervising subcontractors, providing its own equipment, and safety compliance); *Jimenez v. United States*, No. 5:20-cv-00575-XR, 2021 WL 860008, at *4–6 (W.D. Tex. Mar. 5, 2021) (similar). Because Mr. Puebla and the other employees of Caminante and Lucky 22 were not government employees, the Court respectfully concludes that Plaintiffs fail to carry their burden to

overcome the independent contractor exception. *Ohlsen*, 998 F.3d at 1160. The Motion is respectfully **GRANTED** as to this exception. Plaintiffs' vicarious liability claims are **DISMISSED without prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction, . . . the dismissal must be without prejudice.").

**B. Discretionary Function Exception**

The Government next argues that Plaintiffs' direct negligence claims are barred by the FTCA's discretionary function exception. *See* [Doc. 249 at 14–21]. This exception retains sovereign immunity against tort claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a). Congress created the discretionary function exception based on a "desire to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988) (quotation omitted).

The Supreme Court's decision in *Berkovitz* establishes a two-pronged test for determining whether the discretionary function exception applies. *Ohlsen*, 998 F.3d at 1160 (citing *Berkovitz*, 486 U.S. 531). First, courts consider whether the action is a "matter of choice for the acting employee." *Id.* at 1161 (quoting *Berkovitz*, 486 U.S. at 536). An employee has no choice "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536. Second, if the action was a matter of choice, courts ask "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* This analysis looks to "whether the nature of the actions taken implicate public policy concerns, or are

susceptible to policy analysis." *Ohlsen*, 998 F.3d at 1161 (quotation omitted). The second-prong inquiry focuses on the *nature* of the actions and does not account for the "*actual* reason for the decision in question." *Id.* (quotation omitted).

The discretionary exception only applies if both *Berkovitz* prongs are met. *Id.* Plaintiffs bear the burden to show that the exception does not apply. *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016).

**1. First Prong: Matter of Choice**

The Government argues that each of the allegedly negligent actions were "matters of choice for the relevant USPS employees." [Doc. 249 at 15]. Plaintiffs respond that USPS violated its non-discretionary duties under USPS Management Instruction PO-530-2009-4 ("MI 530"), the Contract, and 39 U.S.C. § 5005(a). *See* [Doc. 252 at 13–21]. Because the statutory and contractual arguments raise issues addressed in *Bustillos*, the Court starts there before considering MI 530.

**i. Statutory Authority Under 39 U.S.C. § 5005(a)**

Plaintiffs contend that USPS's use of Lucky 22, a "non-contracted motor carrier," to transport mail violates its statutory directive to "obtain mail transportation service . . . by contract." § 5005(a)(3); [Doc. 252 at 17–19]. The Government replies that "USPS's employees did obtain the mail transportation service at issue by contract—the contract with Caminante." [Doc. 256 at 6]. In *Bustillos*, the Court considered the same argument made by Plaintiffs and found it unpersuasive. *See* 2025 WL 2924648, at *7–8. As the Court explained, the plain text of § 5005(a)(3) "does not proscribe subcontracting or otherwise require USPS to directly contract with every person or entity that transports the mail." *Id.* at *8. For the reasons set out in *Bustillos*, the Court agrees with the Government

that USPS's use of Lucky 22 for mail transportation under its contract with Caminante did not violate § 5005(a).

The Court further notes that Plaintiffs assert no statutory challenge to various other conduct alleged in the Fourth Amended Complaint. This includes USPS's selection of Caminante and Mr. Coreas and its supervision of contractors and their employees. In any event, the Court continues to concur with the weight of persuasive authority concluding that § 5005(a) leaves the training, supervision, and selection of mail carriers to USPS's discretion. *See Bustillos*, 2025 WL 2924648, at *8 n.7 (collecting cases).

**ii. Duties Under the Contract**

Plaintiffs next argue that various Contract provisions create mandatory duties for USPS. Government contracts may impose requirements that leave no room for discretion. *See Bell v. United States*, 127 F.3d 1226, 1228, 1230 (10th Cir. 1997) (holding that construction contract requiring removal of a pipeline left no discretion for the agency's project engineer to leave the pipeline in place). But the specific duty must be placed on the agency, not its contractors; generalized "oversight provisions" are insufficient. *Garcia*, 533 F.3d at 1178 (holding that government employees retained discretion where agency regulation "clearly delegate[d] quality control to independent contractors and provides the Air Force with discretion in monitoring that quality control").

None of the provisions invoked by Plaintiffs meets this standard. First, Plaintiffs point to the "Subcontracting" clause, which requires a contractor to "obtain approval . . . before subcontracting any work awarded under this contract." [Doc. 249-1 at 82 (Clause B-89); Doc. 252 at 15]. That language places the duty on the contractor, not USPS. And even if USPS did know and tacitly approve of Caminante's use of Lucky 22 as a

subcontractor (which is far from clear), the provisions cited by Plaintiffs do not require the approval to take any particular form or otherwise restrict USPS's discretion in that area.

Plaintiffs next claim that the following provision creates a mandatory duty for USPS to inspect contractors' equipment:

> All equipment shall be presented for inspection at the location and time indicated by the contracting officer or authorized representative. Equipment used on the contract must at all times be maintained in a condition that reflects favorably on the Postal Service and is acceptable to the contracting officer or authorized representative for the full term of the contract and any subsequent renewals that might be negotiated.

[Doc. 249-1 at 37 § B.2(d); Doc. 252 at 16].[3] The duties under this provision—to maintain equipment and present it for inspection when ordered—plainly fall on the contractor. For USPS, by contrast, the Contract does not require USPS officials to conduct an inspection at any specific "location," "time," or frequency. And the requirements that equipment "reflect[] favorably" on USPS and be "acceptable to the contracting officer" make any individual inspection decisions discretionary. *See Garcia*, 533 F.3d at 1178 (concluding that provision directing government inspectors to reduce monitoring intensity "[a]fter the contractor achieves a satisfactory level of [quality control] confidence" was discretionary (quotation and emphasis omitted)).

The Court's decision in *Bustillos* disposes of Plaintiffs' final contractual argument. Plaintiffs argue that Clause B-85 of the Contract creates a duty to "ensure contract compliance." [Doc. 252 at 16–17]. Clause B-85 makes the relevant USPS administrative

[3] Plaintiffs attempt to rely on deposition statements to establish USPS's duty to inspect under the Contract. *See* [Doc. 252 at 19–20]. To the extent these statements conflict with the Contract, Plaintiffs do not explain why such statements could create a duty. The Court confines its analysis to the plain language of the Contract. *See, e.g.*, *Bell*, 127 F.3d at 1229–30 (reviewing construction specifications incorporated into contract).

official "responsible for ensuring supplier compliance," which includes "[m]onitoring the supplier's operations daily to ensure contract compliance, including necessary recordkeeping." [Doc. 249-1 at 81]. As the Court has explained, Clause B-85 "does not set out any specific procedures for monitoring or ensuring compliance" and thus "leaves USPS discretion in monitoring that compliance." *Bustillos*, 2025 WL 2924648, at *9. Plaintiffs provide no reason to depart from that conclusion.

**iii. Regulatory Requirements Under MI 530**

In addition to the arguments first raised in *Bustillos* and repeated here, Plaintiffs contend that MI 530 created a non-discretionary duty for USPS to screen Carlos Coreas before permitting him access to USPS operational areas. [*Id.* at 13–15].

MI 530 states that "Postal Service policy requires that . . . contractor personnel be screened to determine their eligibility as drivers and to allow them access to the mail and mail-processing facilities." [Doc. 173-14 at § 111]. Under MI 530, contractor personnel "who transport mail or who are allowed access to Postal Service operational areas must receive nonsensitive clearances." [*Id.* at § 122]. The "administrative official" for a contract "is responsible for obtaining screening information . . . and for verifying [personnel's] eligibility." [*Id.* at § 121]. Contractors are required to identify the individuals requiring screening and provide the applicable screening materials. [*Id.* at § 13]. Any individual subject to screening must provide a "Contract Personnel Questionnaire," an authorization for a background investigation, a fingerprint card, and passport-size photos. [*Id.* at § 13(1)–(5)]. Drivers must also provide a driving record.[4] [*Id.* at § 13(4)]. Once the

[4] Drivers working under Contract Delivery Service ("CDS") contracts must also submit a drug test. [Doc. 173-14 at § 13(6)]. This is doubly inapplicable to Carlos Coreas, who

materials are received, the administrative official forwards them to the Postal Inspection Service for review. [*Id.* at § 14]. USPS regulations provide that "Management Instructions" like MI 530 constitute binding regulations. 39 C.F.R. § 211.2(a).

The Court concludes that MI 530 prescribes a specific course of action to follow before USPS permits a contractor's employee to transport mail or access a USPS operational area. *See Berkovitz*, 486 U.S. at 536. The Government does not dispute this. *See* [Doc. 256 at 8]. Instead, the Government argues that MI 530 "did not require screening Mr. Coreas because he did not drive or handle mail under Caminante's contract." [*Id.*]. True, Mr. Coreas did not drive or handle mail, and USPS did not screen him. [Doc. 249-2 at ¶ 8]. But he "did occasionally come to the Denver [USPS Processing and Distribution Center] for meetings about Caminante's performance on [the Contract]." [*Id.*]. Neither Party addresses whether the entire Processing and Distribution Center constitutes a USPS "operational area" under MI 530, or, if not, whether Mr. Coreas's meetings took place inside an operational area.

Yet even assuming Mr. Coreas was required to be screened, the Court agrees with the Government that Mr. Coreas's occasional attendance at meetings in USPS facilities "lacks a causal relationship to Plaintiffs' injuries." [Doc. 256 at 8]. The discretionary function exception depends on "the precise governmental conduct at issue" and "whether *that conduct* was discretionary." *Garcia*, 533 F.3d at 1176 (emphasis added) (quotation omitted). "To circumvent the discretionary function exception, the mandatory duty alleged must be one whose breach bears a causal relationship to the Plaintiffs' injuries, thereby

---

was not a driver and worked under Caminante's Highway Contract Route ("HCR") contract. *See* [Doc. 249-1 at ¶ 4; *id.* at 15 (referring to the Contract as "HCR 800BA")].

giving rise to their cause of action against the government." *Clark v. United States*, 695 F. App'x 378, 386 (10th Cir. 2017) (first citing *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1132–33 (10th Cir. 1999); and then citing *Berkovitz*, 486 U.S. at 537).

Plaintiffs fail to allege or establish any causal relationship between USPS's failure to screen Carlos Coreas and the accident at issue. MI 530 applies only after a contract is awarded, so any screening for Mr. Coreas could not have affected the selection of Caminante for the Contract. *See* [Doc. 173-14 at § 13 (directing a contractor to provide screening information "[a]t contract award, renewal, and thereafter")]. Nor would this screening have prevented Mr. Puebla from being behind the wheel—Plaintiffs do not dispute that Mr. Puebla was screened pursuant to MI 530 and granted clearance.[5] *See* [Doc. 252 at 15]; *see also* [Doc. 249-2 at 8–14, 16]. Plaintiffs do not explain how screening Mr. Coreas would have altered USPS's supervision of Caminante, Lucky 22, or Mr. Puebla in a manner that averted the accident. They do not suggest that Mr. Coreas would have failed the screening or that the screening would have turned up some piece of information that would or should have changed USPS's conduct. Even if Mr. Coreas's screening would have revealed something that prevented him from accessing USPS facilities, USPS's decisions about how to use that information in its overall supervision of Caminante and Mr. Puebla would still be discretionary. *See Clark*, 695 F. App'x at 386 (applying discretionary function exception where plaintiffs failed to show that agency's

[5] As the Government points out, the fact that Mr. Puebla was screened distinguishes this case from *Thomas-Blakney v. United States*, a case relied on by Plaintiffs. No. 23-cv-02386-PHX-MTM, 2024 WL 6940438 (D. Ariz. Dec. 16, 2024); *see* [Doc. 252 at 13–14; Doc. 256 at 8]. In *Thomas-Blakney*, the district court declined to apply the discretionary function exception where the plaintiff asserted that USPS had failed to follow MI 530 as to the *driver*, and the Government failed to address its compliance with applicable screening procedures. 2024 WL 6940438, at *5–6.

failure to conduct inspections caused their injuries, and reasoning that even if the missed inspections could have revealed dangerous conditions, the determination of how to remediate those conditions would be discretionary); *Johnson v. United States, Dep't of Interior*, 949 F.2d 332, 339 (10th Cir. 1991) ("To attempt to separate [park] rangers' information gathering activity from the ultimate [discretionary] rescue decision is, however, to elevate form over substance.").

At bottom, Plaintiffs offer no theory as to how USPS's admission of Mr. Coreas to its facility for meetings without a security clearance caused the accident between Mr. Puebla and the Godinez family.[6] Indeed, this conduct appears distinct from the precise injury-causing conduct alleged in the Fourth Amended Complaint: USPS's failure to adequately investigate Caminante, Lucky 22, Mr. Coreas, and Mr. Puebla before selecting them to transport mail, and its subsequent failures to supervise its contractors or inspect their equipment. *See, e.g.*, [Doc. 237 at ¶¶ 68–77, 83–88, 101–17, 121–22]. Plaintiffs thus cannot rely on the alleged violation of MI 530 as to Mr. Coreas to avoid the discretionary function exception. The Court respectfully concludes that Plaintiffs fail to carry their burden at the first *Berkovitz* prong.

### 2. Second Prong: Susceptible to Policy Analysis

Plaintiffs address the second *Berkovitz* prong only briefly. They argue that "the USPS's failure to properly conduct mandatory contractor screening, vehicle inspections

[6] While causation can present a factual issue, the Court reaches this conclusion based on Plaintiffs' allegations and the undisputed facts. Accordingly, the Court does not apply a summary judgment standard to this portion of the analysis. *Myles*, 52 F. App'x at 109. But even if such a standard applied, the Court would find that Plaintiffs fail to adduce evidence establishing a genuine factual dispute over causation. *See* Fed. R. Civ. P. 56(a); *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (recognizing that unsubstantiated allegations or speculation carry no weight at summary judgment).

and to permit non-contracted entities to haul mail in violation of its own contracts and regulations was not a policy judgment—it was a violation of specific, nondiscretionary directives that leave no room for choice or policy balancing." [Doc. 252 at 21]. But Plaintiffs' focus on "room for choice" conflates the second *Berkovitz* prong with the first. And their suggestion that USPS officials made certain screening or inspection decisions because they "had never heard of" the applicable regulations—a claim Plaintiffs do not support with record citations—misses the point. [*Id.* at 22]. The second-prong analysis looks to the "nature of the actions taken," not the "intent of the government supervisor when making a specific personnel decision" or "whether policy analysis is the *actual* reason for the decision." *Ohlsen*, 998 F.3d at 1161 (quotation omitted); *see also Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008) (describing inquiry as whether the "type of action at issue" is susceptible to policy analysis).

Here, the nature of the actions taken involves USPS's decision to use Caminante, Lucky 22, and Mr. Puebla to transport mail and its ensuing supervision of its contractors. *See* [Doc. 237 at ¶¶ 101–16]. As the Court explained in *Bustillos*, USPS's selection of contractors depends on considerations of "public interest" and "fiscal responsibility." 2025 WL 2924648, at *10. And USPS's supervision of its contractors and their personnel is similarly grounded in "discretionary regulatory authority" that balances safety considerations against resource constraints. *Id.* (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 819–20 (1984)). These are the types of policy-oriented decisions "that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. So Plaintiffs fail to carry their burden at the second *Berkovitz* prong, too. *See Hardscrabble Ranch*, 840 F.3d at 1220.

Accordingly, the Motion is respectfully **GRANTED** as to the discretionary function exception. Plaintiffs' vicarious liability claims are **DISMISSED without prejudice**. *See Brereton*, 434 F.3d at 1216.

## III. The Court Does Not Reach the Choice of Law Issue

Defendants further ask the Court to conduct a choice-of-law analysis and dismiss certain claims arising under Wyoming law. [Doc. 249 at 21–25]. But the Court need not make a choice-of-law decision "unless there is an outcome determinative conflict between the potentially applicable bodies of law." *SELCO Cmty. Cred. Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 (D. Colo. 2017). Because Plaintiffs' claims are barred no matter which state's law governs, the Court's analysis ends there.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) The United States' Motion to Dismiss [Doc. 249] is respectfully **GRANTED**;

(2) Plaintiffs' claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction;

(3) Plaintiffs' Motion for Status Conference [Doc. 260] is **DENIED as moot**; and

(4) The Clerk of Court is **DIRECTED** to enter judgment in favor of the United States and **TERMINATE** this case.

DATED: August 18, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge